**KILPATRICK TOWNSEND & STOCKTON LLP**
Joseph Petersen (SBN 304597)
*jpetersen@ktslaw.com*
1302 El Camino Real, Suite 175
Menlo Park, California 94025
Telephone: (650) 614-6427

Kollin J. Zimmermann (SBN 273092)
*kzimmermann@ktslaw.com*
1801 Century Park East, Suite 2300
Los Angeles, California 90067
Telephone: (310) 248-3830

Sara K. Stadler (*pro hac vice* application forthcoming)
*sstadler@ktslaw.com*
Briggs M. Wright (*pro hac vice* application forthcoming)
*briggs.wright@ktslaw.com*
3 Times Square
New York, New York 10036
Telephone: (212) 775-8700

Counsel for Defendant The Board of Trustees
of The Leland Stanford Junior University

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| EVOX PRODUCTIONS LLC, a Delaware corporation,<br><br>*Plaintiff*,<br><br>v.<br><br>THE LELAND STANFORD JUNIOR UNIVERSITY, WILLIAM MARSH RICE UNIVERSITY, UNIVERSITY OF MICHIGAN, BAYLOR COLLEGE OF MEDICINE, and DOES 1–10,<br><br>*Defendants*. | Case No. 3:24-cv-09521-NW<br><br>**DEFENDANT THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY'S NOTICE OF MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge: Hon. Noël Wise<br>Hearing Date: April 16, 2025<br>Hearing Time: 9:00 a.m.<br>Courtroom: 3 |

# TABLE OF CONTENTS


NOTICE OF MOTION ........ 1

MEMORANDUM OF POINTS AND AUTHORITIES ........ 1

I. INTRODUCTION ........ 1

II. PLAINTIFF'S ALLEGATIONS ........ 4

III. ARGUMENT ........ 5

A. Plaintiff Lacks Standing to Bring Direct Infringement Claims for Alleged Use of Its Images to Develop and Train a Computer Model and Publish an Academic Research Paper. ........ 5

B. Plaintiff's Claims Should Be Dismissed Under Rule 12(b)(6). ........ 8

C. Plaintiff's Own Allegations Establish Stanford's Fair Use of Plaintiff's Images to Develop and Train a Computer Model and Publish an Academic Research Paper. ........ 9

1. Stanford's Uses at Issue Are Quintessentially Transformative. ........ 11

a. Fundamental Difference of Purpose ........ 12

b. Lack of Commerciality ........ 13

2. Stanford's Transformative Use Predominates Over the Nature of the Copyrighted Work. ........ 15

3. Stanford Took No More of Plaintiff's Images Than Was Necessary ........ 16

4. Stanford's Use Has Not Affected the Relevant Market. ........ 17

D. Plaintiff's Contributory Infringement Claim Should Be Dismissed. ........ 18

E. Plaintiff's Complaint Should Be Dismissed in Its Entirety Because It Does Not Put Stanford on Notice of Plaintiff's Claims. ........ 21

IV. CONCLUSION ........ 23

# TABLE OF AUTHORITIES

**Cases**

*A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630 (4th Cir. 2009) ..... 15

*Adv. Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157 (Fed. Cir. 1993) ..... 8

*Andersen v. Stability AI Ltd.*, 700 F. Supp. 3d 853 (N.D. Cal. 2023), *subsequent determination*, No. 23-cv-00201-WHO, 2024 WL 536279 (N.D. Cal. Feb. 8, 2024) ..... 22

*Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023) ..... 11, 12, 13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..... 4, 8, 9, 19

*Authors Guild v. Google, Inc.*, 804 F.3d 202 (2d Cir. 2015) ..... 15, 16, 17, 18

*Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87 (2d Cir. 2014) ..... 14, 16, 17

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ..... 4, 8, 9, 19

*Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605 (2d Cir. 2006) ..... 15

*Brody v. Fox Broad. Co.*, No. 22cv6249 (DLC), 2023 WL 2758730 (S.D.N.Y. Apr. 3, 2023) ..... 11

*Brown v. Netflix, Inc.*, 462 F. Supp. 3d 453, 464 (S.D.N.Y. 2020), *aff'd*, 855 F. App'x 61 (2d Cir. 2021) ..... 10

*Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687 (7th Cir. 2012) ..... 10

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) ..... passim

*Carey v. Kearsley*, 4 Esp. 168, 170 Eng. Rep. 679 (K.B. 1803) ..... 11

*Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020 (9th Cir. 2013) ..... 20

*Doe 1 v. GitHub, Inc.*, No. 22-cv-06823-JST, 2024 WL 235217 (N.D. Cal. Jan. 22, 2024) ..... 7, 8

*Emerson v. Davies*,
8 F. Cas. 615 (C.C.D. Mass. 1845) .......... 11

*Evox Prods., LLC v. Lemberg L. LLC*,
No. CV 21-7875 PA (AGRx), 2022 WL 19237186 (C.D. Cal. Feb. 15, 2022) .......... 7

*Hachette Book Grp. v. Internet Archive*,
115 F.4th 163 (2d Cir. 2024) .......... 14

*Harper & Row, Publishers, Inc. v. Nation Enters.*,
471 U.S. 539 (1985) .......... 7, 13

*Home Design Servs., Inc. v. David Weekley Homes, LLC*,
No. 2:06-cv-350-FtM-29DNF, 2007 WL 1080001 (M.D. Fla. Apr. 9, 2007) .......... 22

*In re iPhone Application Litig.*,
No. 11-MD-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) .......... 21, 22

*Kelly v. Arriba Soft Corp.*,
336 F.3d 811 (9th Cir. 2003) .......... 14

*Livnat v. Lavi*,
44 U.S.P.Q.2d 1379, 1997 WL 563799 (S.D.N.Y. 1997) .......... 22

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992) .......... 6

*Luvdarts, LLC v. AT&T Mobility, LLC*,
710 F.3d 1068 (9th Cir. 2013) .......... 19

*Mattel, Inc. v. Walking Mountain Prods.*,
353 F.3d 792 (9th Cir. 2003) .......... 15

*Maya v. Centex Corp.*,
658 F.3d 1060 (9th Cir. 2011) .......... 5

*Metro-Godwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
545 U.S. 913 (2005) .......... 20

*Monsarrat v. Newman*,
28 F.4th 314 (1st Cir. 2022) .......... 10

*NXIVM Corp. v. Ross Inst.*,
364 F.3d 471 (2d Cir. 2004) .......... 12

*Parrino v. FHP, Inc.*,
146 F.3d 699 (9th Cir. 1998) .......... 2

*Perfect 10, Inc. v. Amazon.com, Inc.*,
508 F.3d 1146 (9th Cir. 2007) .......... 15

*Perfect 10, Inc. v. Giganews, Inc.*,
847 F.3d 657 (9th Cir. 2017) .......... 18, 19, 20

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
494 F.3d 788 (9th Cir. 2007)....................18

*Raw Story Media, Inc. v. OpenAI, Inc.*,
No. 24 Civ. 01514, 2024 WL 4711729 (S.D.N.Y. Nov. 7, 2024)....................6, 7, 8

*Sedgwick Claims Mgmt. Servs., Inc. v. Delsman*,
No. C-09-1468 SBA, 2009 WL 2157573 (N.D. Cal. July 17, 2009)....................10

*Sega Enters. Ltd. v. Accolade, Inc.*,
977 F.2d 1510 (9th Cir. 1992)....................14

*Sony Comput. Ent., Inc. v. Connectix Corp.*,
203 F.3d 596 (9th Cir. 2000)....................14

*Sony Corp. of Am. v. Universal City Studios, Inc.*,
464 U.S. 417 (1984)....................16, 17

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016)....................6

*Stebbins v. Google LLC*,
No. 23-cv-00322-TLT, 2023 WL 6139454 (N.D. Cal. Aug. 31, 2023), *appeal filed*, No. 24-1936 (9th Cir. Apr. 1, 2024)....................10

*Taylor v. IBM*,
54 F. App'x 794 (5th Cir. 2002)....................22

*Temple v. Abercrombie*,
903 F. Supp. 2d 1024 (D. Haw. 2012)....................5

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021)....................5, 6

*United States v. Corinthian Colls.*,
655 F.3d 984 (9th Cir. 2011)....................2

*Van Buskirk v. Cable News Network, Inc.*,
284 F.3d 977 (9th Cir. 2002)....................2

*Villalpando v. Exel Direct Inc.*,
No. 12-cv-04137 JCS, 2014 WL 1338297 (N.D. Cal. Mar. 28, 2014)....................21

*Yang v. Mic Network, Inc.*,
405 F. Supp. 3d 537 (S.D.N.Y. 2019)....................9, 18

**Statutes**

17 U.S.C. § 101 *et seq.*....................1

17 U.S.C. § 107....................3, 9, 11, 23

17 U.S.C. § 107(1)....................13, 14, 21

17 U.S.C. § 107(4) .......................................................................................... 17

**Other Authorities**

Timnit Gebru et al., *Using Deep Learning and Google Street View to Estimate the Demographic Makeup of Neighborhoods Across the United States*, 114 Proc. Nat'l Acad. Sci. U.S.A. 13018 (2017) .................................passim

U.S. Const. art. I, § 8, cl. 8 ........................................................................... 11

**Rules**

Fed. R. Civ. P. 8(a) .....................................................................................21, 23

Fed. R. Civ. P. 12(b)(1) ........................................................................1, 3, 5, 23

Fed. R. Civ. P. 12(b)(6) ...........................................................................passim

## NOTICE OF MOTION

PLEASE TAKE NOTICE that Defendant The Board of Trustees of the Leland Stanford Junior University, sued as The Leland Stanford Junior University ("Stanford"), by and through undersigned counsel, will move this Court on April 16, 2025 at 9:00 a.m. before the Honorable Noël Wise at the Robert F. Peckham Federal Building, Courtroom 3, 280 South 1st Street, San Jose, California 95113.

Stanford seeks an Order dismissing the Complaint (Dkt. 1) in its entirety pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). First, Stanford will show that this Court lacks subject matter jurisdiction over Plaintiff EVOX Productions LLC's ("Plaintiff") copyright infringement claim arising from Defendants' alleged creation and use of a dataset to train a computer model in furtherance of academic research, as Plaintiff cannot establish "injury in fact." Stanford then will show that Plaintiff cannot state plausible claims for either direct or contributory infringement under the Copyright Act, 17 U.S.C. § 101 *et seq*.

Stanford's motion is based on this Notice of Motion and Memorandum of Points and Authorities, the pleadings and papers on file in this action, the arguments of counsel, and all other materials which may properly come before the Court at or before this motion is heard or taken under submission by the Court.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

This case concerns quintessential academic research that is a "textbook" example of copyright fair use. Plaintiff's claims relate to a seminal research project in deep learning computing vision. The research is described at length in a 2017 paper entitled *Using Deep Learning and Google Street View to Estimate the Demographic Makeup of Neighborhoods Across the United States* (the "2017 Academic Paper"). The 2017 Academic Paper was published in the December 12, 2017, issue of *Proceedings of the National Academy of Sciences of the United States of America*, a

preeminent peer-reviewed scientific journal.[1]

As described in the 2017 Academic Paper, a team of computer science researchers, including researchers at Stanford, developed a computer model that learned to distinguish automobiles from other objects, and that ultimately was trained to detect and identify specific types of automobiles in Google Street View images of public streets. *See* Gebru, *supra*, at 13109. The ultimate goal was to describe how such a model could facilitate the creation of sociological "snapshots" of demographic information based on streetscape imagery. *See id.* at 13108. The researchers demonstrated that their automated vehicle detection tools could complement more costly methods of measuring demographics, and could do so in close to real time. *Id.* The research underlying the 2017 Academic Paper was funded in part by a grant from the National Science Foundation. *Id.* at 13113.

Plaintiff has filed suit against the universities associated with the authors of the 2017 Academic Paper at the time it was published in 2017. Plaintiff's Complaint alleges, in highly conclusory terms, that the Defendants formed a "Consortium" and that this Consortium reproduced, distributed, publicly displayed, and "made available" images in which Plaintiff allegedly holds copyright. Plaintiff's Complaint

---

[1] *See* Timnit Gebru et al., *Using Deep Learning and Google Street View to Estimate the Demographic Makeup of Neighborhoods Across the United States*, 114 Proc. Nat'l Acad. Sci. U.S.A. 13018 (2017) ("Gebru"). Plaintiff references this paper in its Complaint, but does not attach it. The Court is nonetheless empowered to consider it at this stage because "(1) the complaint refers to the document; (2) the document is central to the plaintiff's claim[s]; and (3) no party questions the authenticity of the document." *United States v. Corinthian Colls.*, 655 F.3d 984, 999 (9th Cir. 2011); *see Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) ("Under the 'incorporation by reference' rule of this Circuit, a court may look beyond the pleadings without converting the Rule 12(b)(6) motion into one for summary judgment."). This rule prevents "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998). Accordingly, a true and correct copy of the 2017 Academic Paper is attached hereto as Exhibit A.

is wholly devoid of any allegations of the nature of this "Consortium" and the roles played by the various university defendants, let alone the roles played by the individual researchers.

Plaintiff asserts two causes of action—one for copyright infringement, and the other for contributory copyright infringement. Those claims, on their face, encompass all alleged uses of Plaintiff's alleged copyrighted images in connection with the 2017 Academic Paper. Thus, those claims sweep in both: (1) alleged uses of Plaintiff's images to develop and train a computer model and publish an academic research paper about the project; and (2) alleged distribution of datasets containing Plaintiff's images to enable other scholars to confirm the validity of the findings set forth in the paper.

Plaintiff's direct infringement claims arising from alleged use in connection with training and developing the model and publishing the paper should be dismissed on two grounds: *First*, Plaintiff's claims fail under Rule 12(b)(1) because Plaintiff has not alleged any concrete and actual "injury in fact" caused by Stanford's alleged use of Plaintiff's images to create a data set, develop and train a computer model, and publish academic research articles that do not themselves contain Plaintiff's copyrighted works. Accordingly, Plaintiff lacks standing to assert such claims. *Second*, Plaintiff's claims fail under Rule 12(b)(6) because the alleged uses of Plaintiff's images to create a dataset, train a computer model to recognize automobiles and types of automobiles, and publish a paper about the potential applications of this academic research are quintessential fair uses under 17 U.S.C. § 107. They therefore are not infringing as a matter of law.

In addition, Plaintiff's contributory infringement claim relating to the alleged uses in Category (2) should be dismissed under Rule 12(b)(6) because Plaintiff has not alleged any *facts* supporting its claim that Defendants or the Consortium "knowingly induced others to violate [Plaintiff's] copyrights." Compl. ¶ 66, Dkt. 1 at 11; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v.*

*Twombly*, 550 U.S. 544, 570 (2007)). Indeed, Plaintiff omits to allege such facts for good reason, as it will be impossible for Plaintiff to plausibly allege that Stanford made the datasets available for anything other than a customary academic purpose.

Finally, Plaintiff's claims fail in their entireties, and each should be dismissed, because the Complaint's allegations against the four university defendants and ten Does, as a group, do not put Stanford on notice of its particular conduct alleged to be infringing.

## II. PLAINTIFF'S ALLEGATIONS

Plaintiff claims to own a catalogue of "the highest quality still images, interactive images, and videos of several thousand vehicle makes and models," which it "licenses . . . to a variety of entities in the automobile industry." Compl. ¶ 18, Dkt. 1 at 4. Plaintiff "monitor[s] the internet for the unauthorized use of its copyrighted Images in order to protect its licensing business," *id.* ¶ 25, Dkt. 1 at 5.

Plaintiff alleges that "Defendants" or a "consortium comprised of Defendants' representatives" infringed 8,100 of its copyrighted vehicle photos by "scour[ing] the internet in order to gather images of vehicles," making those images "publicly available . . . at Stanford's website," and knowingly inducing third parties to make "unauthorized use of [Plaintiff's] copyrighted images for commercial uses." Compl. ¶¶ 20, 26, 29, 31, 33, 34, 66, Dkt. 1 at 4–6, 11. The context for these alleged acts is that the "Consortium" allegedly created a dataset containing images of vehicles, used those images "to develop a computer program," and published "an article." *Id.* ¶¶ 28, 35, 43, 44, Dkt. 1 at 6–8. Indeed, the Complaint goes on to quote selected language from the "article" and an "earlier version" of it, making it clear that Plaintiff's claims all relate to the research project that is the subject of the 2017 Academic Paper. *See id.* ¶¶ 43, 44, Dkt. 1 at 8.

The Complaint further alleges that after this research was completed, the Consortium made 11,364 of Plaintiff's images "publicly available" from links on

Stanford's website. *Id.* ¶ 29, Dkt. 1 at 6. According to Plaintiff, these images were allegedly "downloaded repeatedly by other users without license or authorization." *Id.* ¶ 30, Dkt. 1 at 6. Plaintiff alleges that the Consortium's actions have "facilitated the unauthorized use of [Plaintiff's] copyrighted images for commercial uses" and argues that a "for-profit company" named "Sighthound" "fine-tuned" its own model on the "Stanford Cars training data" in connection with license plate recognition software. *Id.* ¶¶ 31, 32, Dkt. 1 at 6.

## III. ARGUMENT

### A. Plaintiff Lacks Standing to Bring Direct Infringement Claims for Alleged Use of Its Images to Develop and Train a Computer Model and Publish an Academic Research Paper.

"Article III [of the Constitution] confines the federal judicial power to the resolution of 'Cases' and 'Controversies' . . . ." *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021) (citation omitted). If a plaintiff lacks standing, no case or controversy exists, "and consequently a federal court lacks subject matter jurisdiction." *Temple v. Abercrombie*, 903 F. Supp. 2d 1024, 1030 (D. Haw. 2012) (citations omitted). "[L]ack of Article III standing requires dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).

"[T]o establish standing, a plaintiff must show (i) that he suffered an injury in fact that is concrete, particularized, and actual or imminent; (ii) that the injury was likely caused by the defendant; and (iii) that the injury would likely be redressed by judicial relief." *TransUnion*, 594 U.S. at 423 (citation omitted). "[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek (for example, injunctive relief and damages)." *Id.* at 431.

Merely alleging violations of the Copyright Act is not sufficient to establish standing, as "Article III standing requires a concrete injury even in the context of a statutory violation." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016). This means that "[o]nly those plaintiffs who have been concretely harmed by a defendant's statutory violation may sue that private defendant over that violation in federal court." *TransUnion*, 594 U.S. at 427. "The party invoking federal jurisdiction bears the burden of establishing these elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992).

The court recently applied these principles in *Raw Story Media, Inc. v. OpenAI, Inc.*, No. 24 Civ. 01514, 2024 WL 4711729 (S.D.N.Y. Nov. 7, 2024), in which the plaintiffs alleged that their copyrighted works, stripped of copyright management information ("CMI"), were used to train the computer software for "ChatGPT" and remained in the defendant's repository of text. The plaintiffs argued "the unlawful removal of CMI from a copyrighted work is a concrete injury" under the Digital Millennium Copyright Act ("DMCA"), thus entitling them to damages. *Id.* at *3 (citation omitted). They also argued they had standing to pursue injunctive relief because they alleged a "substantial risk" that the defendants' program would, in response to prompts, provide responses incorporating protected material from the plaintiffs' copyrighted works. *Id.*

The court disagreed on both counts. Because the plaintiffs had "not alleged any *actual* adverse effects stemming from this alleged DMCA violation," the court held the plaintiffs lacked standing to seek retrospective relief in the form of damages. *Id.* at *4. As for the plaintiffs' entitlement to injunctive relief, the plaintiffs themselves alleged that

> ChatGPT has been trained on "a scrape of most of the internet," which includes massive amounts of information from innumerable sources on almost any given subject. Plaintiffs have nowhere alleged that the *information* in their articles is copyrighted, nor could they do so. When

> a user inputs a question into ChatGPT, ChatGPT synthesizes the relevant information in its repository into an answer.

*Id.* at *5 (internal citation omitted). "Given the quantity of information contained in the repository," the court found "the likelihood that ChatGPT would output plagiarized content from one of Plaintiffs' articles" was "remote," thus depriving the plaintiffs of standing to seek injunctive relief as well. *Id.*; *see also Doe 1 v. GitHub, Inc.*, No. 22-cv-06823-JST, 2024 WL 235217, at *5 (N.D. Cal. Jan. 22, 2024) (where "Codex and Copilot were trained on 'billions of lines' of publicly available code, including code from public GitHub repositories, dismissing damages claims by Does 3 and 4 with prejudice because they "have not alleged instances where their code has been output" and therefore "have not demonstrated 'a qualifying injury-in-fact that has actually occurred to them'" (citation omitted)).

The same reasoning applies here. Plaintiff claims it was "damaged" by Defendants' unlicensed[2] use of its vehicle photos to create a dataset, develop a computer program, and publish an article that does not contain any of Plaintiff's copyrighted images. Compl. ¶¶ 20, 28, 35, 43, 44, 48, 64, Dkt. 1 at 4, 6–8, 10. As in

---

[2] The Complaint repeatedly invokes the phrase "without license," likely because Plaintiff intends to rely upon *Evox Productions, LLC v. Lemberg Law LLC*, No. CV 21-7875 PA (AGRx), 2022 WL 19237186 (C.D. Cal. Feb. 15, 2022), but that case is distinguishable. In *Lemberg*, the court found the plaintiff plausibly alleged its standing to seek monetary harm because "Plaintiff regularly licenses its images for a fee and Defendants' alleged infringement deprived Plaintiff of that licensing fee." *Id.* at *5. Notably, however, the defendants allegedly used the plaintiff's copyrighted images of vehicles to advertise legal services in connection with lemon laws, and the Complaint alleged that the plaintiff licenses its vehicle images for advertising purposes. *Id.* at *1. Here, Plaintiff does not allege it licenses its copyrighted works for use in datasets to train computer models—nor could it, as this is not "any part of the normal market" for images of vehicles. *See Harper & Row, Publishers, Inc. v. Nation Enters.*, 471 U.S. 539, 568 (1985); *see also Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 592 (1994) ("The market for potential derivative uses includes only those that creators of original works would in general develop or license others to develop.").

*Raw Story Media*, however, Plaintiff has not alleged (and cannot allege) "any *actual* adverse effects stemming from [these] alleged . . . violation[s]," nor has Plaintiff alleged *any* likelihood that Defendants' research project itself "would output plagiarized content from one of Plaintiff['s] [images]." *See* 2024 WL 4711729, at *4, *5. Plaintiff therefore lacks standing to seek both monetary and injunctive relief on its direct infringement claim involving these activities, thus depriving this Court of subject matter jurisdiction over that claim. As to these uses by Defendants, Plaintiff has "not alleged instances where [its images have] been output" and therefore has "not demonstrated 'a qualifying injury-in-fact.'" *See GitHub*, 2024 WL 235217, at *5 (citation omitted). This failure is fatal to Plaintiff's claim. Accordingly, this Court should hold that Plaintiff lacks standing to bring direct infringement claims for alleged use of its images to develop and train a computer model and publish an academic research paper.

**B. Plaintiff's Claims Should Be Dismissed Under Rule 12(b)(6).**

The purpose of Rule 12(b)(6) is to enable courts to dismiss actions for which the plaintiff has standing, but that nonetheless "are fatally flawed in their legal premises and destined to fail, and thus to spare litigants the burdens of unnecessary pretrial and trial activity." *Adv. Cardiovascular Sys., Inc. v. Scimed Life Sys., Inc.*, 988 F.2d 1157, 1160 (Fed. Cir. 1993). Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In drawing those inferences, the Court need not accept Plaintiff's "conclusory statements" as true, nor do "legal conclusion[s] couched as . . . factual allegation[s]" merit such deference. *Id.* (quoting *Twombly*, 550 U.S. at 555).

The Court therefore should begin by excluding those "[t]hreadbare recitals" and "conclusory statements," then determine whether Plaintiff has "'nudged [its] claims' . . . 'across the line from conceivable to plausible.'" *Id.* at 678, 680 (quoting *Twombly*, 550 U.S. at 570).

### C. Plaintiff's Own Allegations Establish Stanford's Fair Use of Plaintiff's Images to Develop and Train a Computer Model and Publish an Academic Research Paper.

Section 107 of the Copyright Act provides in relevant part that "the fair use of a copyrighted work . . . for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright." 17 U.S.C. § 107. In determining whether a use is fair, courts are to consider the following factors:

> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
> (2) the nature of the copyrighted work;
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

*Id.*

A plaintiff's own allegations can establish that the defendant's use is fair and therefore "not an infringement." *See id.* This is because in many cases, "'the only two pieces of evidence needed to decide the question of fair use' are 'the original version' and the allegedly infringing version." *Yang v. Mic Network, Inc.*, 405 F. Supp. 3d 537, 542 (S.D.N.Y. 2019) (citations omitted). In such cases, courts have not hesitated to dismiss copyright claims against fair users at the pleading stage where, as here, the allegedly infringing use is fair as a matter of law. *See Stebbins v. Google LLC*, No. 23-cv-00322-TLT, 2023 WL 6139454, at *8 (N.D. Cal. Aug. 31, 2023) (dismissing plaintiff's copyright infringement claim without leave to amend based on finding of

fair use), *appeal filed*, No. 24-1936 (9th Cir. Apr. 1, 2024); *Sedgwick Claims Mgmt. Servs., Inc. v. Delsman*, No. C-09-1468 SBA, 2009 WL 2157573, at *7 (N.D. Cal. July 17, 2009) (same).[3]

Plaintiff alleges Defendants or the "Consortium" infringed its copyrighted photographs of vehicles in several ways, including by using Plaintiff's images to (a) create a dataset, (b) develop and train a computer model designed to identify the makes and models of vehicles parked on public streets, and (c) publish research papers discussing this project and its potential applications. As to these uses, the Complaint alleges the following:

- The "Consortium . . . scoured the internet" for "images of vehicles" and "gathered [Plaintiff's] copyrighted Images" together (Compl. ¶¶ 26, 60, Dkt. 1 at 5, 10);
- The "Consortium" assembled those images "into a dataset on Defendants' servers" and "initially used the images it gathered to develop a computer program" (*id.* ¶¶ 28, 60, Dkt. 1 at 6, 10); and
- The "Consortium" published "an article related to the Consortium's use of [Plaintiff's] copyrighted Images." *Id.* ¶¶ 43, 44, Dkt. 1 at 8.

Taken as true, Plaintiff's allegations establish the fair use of these works as a matter of law. As well-stated in *Campbell*,

> From the infancy of copyright protection, some opportunity for fair use of copyrighted materials has been thought necessary to fulfill copyright's very purpose, "[t]o promote the Progress of Science and useful Arts . . . ." For as Justice Story explained, "[i]n truth, in literature, in science and in art, there are, and can be, few, if any, things, which in an abstract sense, are strictly new and original throughout. Every book in

[3] *See also Monsarrat v. Newman*, 28 F.4th 314, 321 (1st Cir. 2022) (affirming dismissal of copyright infringement claim based on fair use); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 690–92 (7th Cir. 2012) (same); *Brown v. Netflix, Inc.*, 462 F. Supp. 3d 453, 464 (S.D.N.Y. 2020) (granting motion to dismiss on fair use grounds), *aff'd*, 855. F. App'x 61 (2d Cir. 2021).

> literature, science and art, borrows, and must necessarily borrow, and use much which was well known and used before." Similarly, Lord Ellenborough expressed the inherent tension in the need simultaneously to protect copyrighted material and to allow others to build upon it when he wrote, "while I shall think myself bound to secure every man in the enjoyment of his copy-right, one must not put manacles upon science."

*Campbell*, 510 U.S. at 575–76 (alterations in original) (first quoting U.S. Const. art. I, § 8, cl. 8; then quoting *Emerson v. Davies*, 8 F. Cas. 615, 619 (C.C.D. Mass. 1845); and then quoting *Carey v. Kearsley*, 4 Esp. 168, 170, 170 Eng. Rep. 679, 681 (K.B. 1803)). Using copyrighted photographs to create a dataset used to develop and train a computer program to recognize automobiles and types of automobiles, and publishing an academic research paper about that groundbreaking project, are textbook examples of the transformative uses at the heart of fair use.

**1. Stanford's Uses at Issue Are Quintessentially Transformative.**

While the Complaint takes pains to avoid describing Stanford as an institution of higher learning, Plaintiff acknowledges (as it must) that the "Consortium" includes Stanford's Artificial Intelligence Laboratory and Computer Science Department. Compl. ¶ 27, Dkt. 1 at 5. These groups of scientists are engaged in "scholarship" and "research"—two of the examples set forth in 17 U.S.C. § 107. *See* Gebru, *supra*. These examples "reflect 'the sorts of copying that courts and Congress most commonly ha[ve] found to be fair uses,' and so may guide the first factor inquiry." *Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 528 (2023) (citation omitted); *see Brody v. Fox Broad. Co.*, No. 22cv6249 (DLC), 2023 WL 2758730, at *3 (S.D.N.Y. Apr. 3, 2023) ("When . . . the copied work is being used for one of the purposes identified in the preamble of § 107, there is a 'strong presumption' in favor of fair use." (citing *NXIVM Corp. v. Ross Inst.*, 364 F.3d 471, 477 (2d Cir. 2004))).

Scholarship and research have an obvious claim to fair use because "they contemplate the use of an original work to 'serv[e] a manifestly different purpose from the [work] itself.'" *Andy Warhol*, 598 U.S. at 528 (alterations in original) (citation omitted). The Supreme Court recently confirmed the critical importance of this difference, writing:

> [T]he first fair use factor considers whether the use of a copyrighted work has a further purpose or different character, which is a matter of degree, and the *degree of difference* must be balanced against the *commercial nature of the use*. If an original work and a secondary use share the same or highly similar purposes, and the secondary use is of a commercial nature, the first factor is likely to weigh against fair use, absent some other justification for copying.

*Id.* at 532–33 (emphases added). Here, the researchers used images of vehicles to train a software algorithm, then published that research to benefit the public by saving demographers countless hours gathering data by hand, and enabling researchers to focus on finding solutions to socioeconomic problems. *See* Gebru, *supra*, at 13108–09. These considerations favor Stanford as a matter of law.

**a. Fundamental Difference of Purpose**

"The larger the difference [of purpose], the more likely the first factor weighs in favor of fair use. The smaller the difference, the less likely." *Andy Warhol*, 598 U.S. at 529. In *Andy Warhol*, the copyrighted work and the alleged infringement shared "substantially the same" purpose because both were "portraits of Prince used in magazines to illustrate stories about Prince." *Id.* at 535.

Here, the purposes served by Plaintiffs' alleged copyrighted works and Defendants' dataset, computer model, and academic research articles could not be more different. Plaintiff alleges it owns "the highest quality still images, interactive images, and videos of several thousand vehicle makes and models," which it "licenses . . . to a variety of entities in the automobile industry." Compl. ¶ 18, Dkt. 1

at 4. Defendants' dataset and computer model were designed to recognize the make, model, and year of a vehicle, based solely upon images of it, for the purpose of predicting demographic attributes of a particular geographic area based on the varieties of vehicles recognized by the model in the Google Street View images captured in that area. *See* Gebru, *supra*. This fundamental difference of purpose weighs heavily in favor of fair use.

**b. Lack of Commerciality**

"[T]he more transformative the new work, the less will be the significance of other factors, like commercialism, that may weigh against a finding of fair use." *Campbell*, 510 U.S. at 579. In other words, the commerciality of a defendant's use is "to be weighed against the degree to which the use has a further purpose or different character." *Andy Warhol*, 598 U.S. at 531 (citing *Campbell*, 510 U.S. at 579). In *Andy Warhol*, where the works at issue served "substantially the same" purpose, *id.* at 535, the commerciality of the allegedly infringing use was significant. The accused use was "of a commercial nature" because "[j]ust as Goldsmith licensed her photograph to Vanity Fair for $400, [Andy Warhol Foundation] licensed Orange Prince to Condé Nast for $10,000." *Id.* at 537 (quoting 17 U.S.C. § 107(1)). The Court held this "undisputed" commercial character, "though not dispositive," further weighed "against a finding of fair use." *Id.* (quoting *Harper & Row*, 471 U.S. at 562).

Here, the Complaint's only mentions of commerciality appear in Plaintiff's speculative allegations about the actions of third parties who "retrieved [Plaintiff's] Images from Defendants' servers." Compl. ¶¶ 31, 70, Dkt. 1 at 6, 11. Plaintiff does not (and cannot) truthfully allege that Defendants' or the Consortium's uses of Plaintiff's images to create a dataset, develop and train a computer model, and publish articles about this groundbreaking research were commercial in nature. Even if Plaintiff sought to rely upon its jurisdictional allegation that Defendants seek to "strengthen their standing in the highly competitive market for students focused on

building technology careers in Northern California in general, and Silicon Valley in particular," *id.* ¶ 8, Dkt. 1 at 3, this is not a *commercial* purpose within the meaning of 17 U.S.C. § 107(1). *See Hachette Book Grp. v. Internet Archive*, 115 F.4th 163, 186 (2d Cir. 2024) (observing defendant "obtains only those nonmonetary benefits that attend most other legitimate, secondary uses, including advancing its mission and bolstering its reputation. Characterizing these general benefits as commercial profits would render commercial the activities of virtually any nonprofit organization that bolsters its reputation through its own nonprofit activities.").

Defendants' and the Consortium's alleged uses of Plaintiff's images of automobiles to create a dataset, develop and train a computer model, and publish academic research articles about the demographic utility of identifying makes, models, and years of vehicles on public roadways were made to advance scholarship and learning, not for commercial reasons. Further, these uses have nothing to do with the alleged expressive content of Plaintiff's images, making the uses quintessentially transformative.

This factor favors Stanford as a matter of law. *See Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87 (2d Cir. 2014) (holding digitization of millions of copyrighted books for purposes of facilitating full-text searching and access by the print-disabled protected as fair use under Section 107); *see also Sega Enters. Ltd. v. Accolade, Inc.*, 977 F.2d 1510, 1526–27 (9th Cir. 1992) (use of copyrighted work for reverse engineering purposes protected as fair); *Sony Comput. Ent., Inc. v. Connectix Corp.*, 203 F.3d 596, 605–06 (9th Cir. 2000) (same); *Kelly v. Arriba Soft Corp.*, 336 F.3d 811, 818 (9th Cir. 2003) (finding use of images in search engine thumbnails fair as unrelated to any aesthetic purpose and instead "a tool to help index and improve access to images on the internet and their related web sites"); *Perfect 10, Inc. v. Amazon.com, Inc.*, 508 F.3d 1146, 1167 (9th Cir. 2007) (finding use of copyrighted images to display search engine results was fair because the use of thumbnails was

transformative); *A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630, 640 (4th Cir. 2009) (holding "archiving of plaintiffs' papers was transformative and favored a finding of 'fair use' . . . [since it] was completely unrelated to expressive content and was instead aimed at detecting and discouraging plagiarism"); *Authors Guild v. Google, Inc.*, 804 F.3d 202, 216 (2d Cir. 2015) (same).

**2. Stanford's Transformative Use Predominates Over the Nature of the Copyrighted Work.**

"The second factor in the fair use analysis 'recognizes that creative works are closer to the core of intended copyright protection than informational and functional works.'" *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 803 (9th Cir. 2003) (citation omitted). As both the Second and Ninth Circuits have observed, however, "this [nature of the copyrighted work] factor typically has not been terribly significant in the overall fair use balancing." *Id.* (alteration in original) (citation omitted); *see Google*, 804 F.3d at 220 ("[C]ourts have hardly ever found that the second factor in isolation played a large role in explaining a fair use decision.").

Here, the highly transformative purpose of Defendants' or the Consortium's dataset, computer model, and academic research makes the nature of Plaintiff's copyrighted works (stock photographs of automobiles) "of limited usefulness" in the fair use analysis. This would be the case even if those works had been especially creative, rather than factual depictions of functional objects. *See Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 612 (2d Cir. 2006). Researchers did not select the images for inclusion in the dataset based on their expressive content, but because those images were publicly available sources of useful training data. *See* Gebru, *supra*. These uses "transformatively provided valuable information . . . , rather than replicating protected expression in a manner that provides a meaningful substitute for the original." *Google*, 804 F.3d at 220. This factor also favors Stanford as a matter of law.

### 3. Stanford Took No More of Plaintiff's Images Than Was Necessary.

The third factor asks whether the amount copied was reasonable in relation to the purpose of the copying, as "the extent of permissible copying varies with the purpose and character of the use." *Campbell*, 510 U.S. at 586–87. The inquiry is whether "no more was taken than necessary" to achieve that purpose. *Id.* at 587 (citation omitted). "For some purposes, it may be necessary to copy the entire copyrighted work, in which case [the third factor] does not weigh against a finding of fair use." *HathiTrust*, 755 F.3d at 98. As with the second factor, this is particularly true of transformative uses.

"Complete unchanged copying has repeatedly been found justified as fair use when the copying was reasonably appropriate to achieve the copier's transformative purpose and was done in such a manner that it did not offer a competing substitute for the original." *Google*, 804 F.3d at 221. In *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417 (1984), for example, the Supreme Court observed that considering the "noncommercial" nature of the use—*i.e.*, Betamax devices enabling viewers to engage in "time-shifting" of works they "had been invited to witness in [their] entiret[ies] free of charge"—"the fact that the entire work is reproduced" did not weigh against a finding of fair use. *Id.* at 449–50.

The same is true here. Defendants' or the Consortium's use of entire vehicle images was necessary to effectively train the model to recognize the makes, models, and years of the vehicles parked on public streets. *See* Gebru, *supra*. Partial images would have produced inaccurate results, and therefore would not have enabled Defendants to complete their research. Under these circumstances, Defendants' or the Consortium's use was not excessive "[b]ecause it was reasonably necessary" to achieve a transformative purpose. *See HathiTrust*, 755 F.3d at 98. This factor favors Stanford as a matter of law. *See id.* at 99 (weighing the third factor in defendant's

favor because there was "no reason to think" that the creation of "digital copies of all the books in their collections" was "excessive or unreasonable in relation to the purposes identified by [defendant] and permitted by the law of copyright").

**4. Stanford's Use Has Not Affected the Relevant Market.**

The fourth fair use factor is "the effect of the use upon the potential market for or value of the copyrighted work." *Campbell*, 510 U.S. at 590 (quoting 17 U.S.C. § 107(4)). "To defeat a claim of fair use, the copyright holder must point to market harm that results because the secondary use *serves as a substitute for the original work*." *HathiTrust*, 755 F.3d at 96 (emphasis added) (citing *Campbell*, 510 U.S. at 591 (instructing that "cognizable market harm" is limited to "market substitution")); *see also Google*, 804 F.3d at 223 (stating the fourth factor "focuses on whether the copy brings to the marketplace a competing substitute for the original, or its derivative, so as to deprive the rights holder of significant revenues *because of the likelihood that potential purchasers may opt to acquire the copy in preference to the original*" (emphasis added)). This is because "a use that has no demonstrable effect upon the potential market for, or the value of, the copyrighted work need not be prohibited in order to protect the author's incentive to create." *Sony*, 464 U.S. at 450.

Defendants or the Consortium used Plaintiff's alleged copyrighted works to create datasets that enabled computer models to detect and identify specific kinds of automobiles parked in public view, all for the academic purpose of facilitating the collection of complex information about demographic and socioeconomic attributes of different populations (and writing a paper about it). The Complaint does not contain *any facts* suggesting these uses could act as market substitutes for Plaintiff's images (they could not), and thus contains no factual support for the allegation that Plaintiff "has been damaged" by these uses. Compl. ¶ 64, Dkt. 1 at 10. This factor favors Stanford as a matter of law.

In sum, because Defendants' or the Consortium's use of Plaintiff's alleged copyrighted works to create a dataset, train a computer model, and publish an academic paper about the research project was highly transformative, "reasonable in light of that end," Plaintiff's works were "already published, and there is no plausible risk to any market for licensing of the original work," this Court should dismiss Plaintiff's direct infringement claim as to these uses. *See Yang*, 405 F. Supp. 3d at 548 (finding defendant's use was "fair as a matter of law" on motion to dismiss); *see also Google*, 804 F.3d at 229 (affirming finding of fair use where "[t]he purpose of the copying is highly transformative, the public display of text is limited, and the revelations do not provide a significant market substitute for the protected aspects of the originals").

**D. Plaintiff's Contributory Infringement Claim Should Be Dismissed.**

To plausibly plead contributory copyright infringement, Plaintiff must allege: (1) direct infringement by a third party; (2) Stanford's knowledge of that third party's direct infringement; and (3) that Stanford "either (a) materially contribute[d] to or (b) induce[d] that infringement." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 670 (9th Cir. 2017) (quoting *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 794–95 (9th Cir. 2007)).

The Complaint asserts contributory infringement under an inducement theory, alleging that Defendants or the Consortium "knowingly induced others to violate [Plaintiff's] copyrights by reproducing, distributing, publicly displaying, and making [Plaintiff's images] available" "on Defendants' servers" "without license or authorization" "with the expectation that the Images would be reproduced, distributed, and publicly displayed by other third-party websites." Compl. ¶¶ 66, 67, Dkt. 1 at 11. Plaintiff further alleges that "third-party websites copied [Plaintiff's] Images . . . from Defendants' servers" and "used them to develop commercial

products," which Defendants were "aware of . . . and encouraged . . . to advance their own interests." Compl. ¶¶ 68–70, Dkt. 1 at 11.

Setting aside that Stanford's "interests" were (and are) only to engage in scholarly research and enable customary access to the data underlying the research for purposes of peer review, these allegations are nothing but legal conclusions and boilerplate. *First*, Plaintiff has not alleged a single *fact* concerning Defendants' or the Consortium's alleged knowledge or inducement of infringement. It is well established that a claim for contributory infringement requires more than "generalized knowledge by the [defendant] of the possibility of infringement." *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013). Instead, Plaintiff must allege that Stanford had "actual knowledge of specific acts of infringement." *Id.* (citation omitted). Plaintiff's Complaint is wholly devoid of facts supporting such a showing.

The mere allegation that Defendants or the Consortium, as a group, "made [Plaintiff's] copyrighted Images available on Defendants' servers" (Compl. ¶ 67, Dkt. 1 at 11) is insufficient factual support for Plaintiff's allegation that Defendants "*knowingly* induced others to violate [Plaintiff's] copyrights." *Id.* ¶ 66, Dkt. 1 at 11 (emphasis added). The latter is nothing but a "legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678, 680 (quoting *Twombly*, 550 U.S. at 555, 570); *see also Luvdarts*, 710 F.3d at 1072 ("[Plaintiff's] conclusory allegations that the [defendants] had the required knowledge of infringement are plainly insufficient.").

*Second*, Plaintiff's contributory infringement claim does not plausibly allege that Stanford possessed the requisite intent to induce third parties to infringe Plaintiff's alleged copyrighted works. A plaintiff claiming liability under an inducement theory must allege: "(1) the distribution of a device or product, (2) acts of infringement, (3) *an object of promoting its use to infringe copyright*, and (4) causation." *Giganews*, 847 F.3d at 672 (quoting *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1032 (9th Cir. 2013) (emphasis added)); *see also Metro-*

*Godwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 919, 936–37 (2005) ("[O]ne who distributes a device with the object of promoting its use to infringe copyright, as shown by *clear expression* or other *affirmative steps taken* to foster infringement, is liable for the resulting acts of infringement by third parties." (emphases added)).

Here, Plaintiff alleges only that Defendants or the Consortium "reproduc[ed], distribut[ed], publicly display[ed], and ma[de] available" Plaintiff's images without permission. Compl. ¶ 66, Dkt. 1 at 11. Inducement requires something more—namely, "the object of promoting" infringement. *Giganews*, 847 F.3d at 672. Plaintiff's formulaic allegations that Defendants or the Consortium made Plaintiff's copyrighted images available to third parties "with the expectation" that the images would be reproduced and "encouraged" infringement by third parties are conclusory and completely devoid of factual support. *See* Compl. ¶¶ 67–69, Dkt. 1 at 11; *Giganews*, 847 F.3d at 672 (holding that even if defendant "offer[ed] 25,000 terabytes of copyrighted materials . . . without permission," and "advertise[d] that it does not keep track of subscriber downloads," that conduct would not suggest that defendant "clearly expressed an intent to promote infringement or took 'affirmative steps . . . to foster infringement'") (second and fourth alterations in original) (citations omitted)).

*Third*, Plaintiff does not allege a single fact from which this Court could conclude that any direct infringement occurred. Apart from a list of "third-party websites"—several of which are obviously academic in nature (*see* Compl. ¶37, Dkt. 1 at 7)—Plaintiff cites only one example of an alleged infringement by a third party. According to the Complaint, that "for-profit company," "Sighthound," used the "Stanford Cars training data" to "fine-tun[e]" its advanced license plate recognition software—in other words, to train a computer model. *See* Compl. ¶¶ 31, 32, Dkt. 1 at 6. The only reasonable conclusion based on this factual allegation is that Sighthound's purpose (training a computer model) also differs fundamentally from Plaintiff's

(accurately portraying the exteriors and interiors of vehicles), making Sighthound's use transformative under 17 U.S.C. § 107(1). This would give Sighthound a strong claim to fair use on its own account. *See supra* Part III(C)(1)(a). Regardless, Plaintiff has not plausibly alleged direct infringement by a single third party.

In view of these multiple deficiencies, Plaintiff has not plausibly alleged any of the elements of a contributory copyright infringement claim. That claim should be dismissed in its entirety.

**E. Plaintiff's Complaint Should Be Dismissed in Its Entirety Because It Does Not Put Stanford on Notice of Plaintiff's Claims.**

Finally, to satisfy Federal Rule of Civil Procedure 8(a), Plaintiff "must identify what action each Defendant took that caused Plaintiff harm"—i.e., who did what—"without resort to generalized allegations against Defendants as a whole." *In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *8 (N.D. Cal. Sept. 20, 2011). This is because a "[p]laintiff's failure to allege what role each [d]efendant played in the alleged harm . . . makes it exceedingly difficult, if not impossible[,] for individual [d]efendants to respond to [p]laintiff['s] allegations." *Id.* To sufficiently plead its claims, Plaintiff must provide Stanford with "sufficient notice . . . as to the nature of the claims being asserted against [it]," including allegations concerning Stanford's particular conduct at issue. *Villalpando v. Exel Direct Inc.*, No. 12-cv-04137 JCS, 2014 WL 1338297, at *5 (N.D. Cal. Mar. 28, 2014). Plaintiff has not done so.

The Complaint's only references to Stanford in connection with the alleged "infringing activities" are to Stanford's website and server.[4] *See* Compl. ¶¶ 29, 33,

[4] The Complaint also references an unnamed article "posted on Stanford's website" that allegedly extols the virtues of fair use for libraries, archives, and nonprofit educational institutions. Plaintiff implies, without basis, that Stanford shares this view, and further implies that reliance on fair use—which has its roots in the First Amendment—"reflect[s] an institutional belief that Defendants and other educational institutions need not respect the intellectual property rights of others simply by virtue

34, 36, 41, Dkt. 1 at 6–8. The only allegedly infringing *conduct* described in the Complaint is attributed either to a "Consortium" "comprised of Defendants' representatives" or to "Defendants" as a group. *See, e.g.*, Compl. ¶¶ 20, 58–64, 66–71, Dkt. 1 at 4, 10. These general allegations fail to put any of Defendants (including Stanford) on notice of their own alleged conduct giving rise to copyright infringement liability, which makes it "exceedingly difficult, if not impossible," for Stanford to defend Plaintiff's claims. *See iPhone Application Litig.*, 2011 WL 4403963, at *8.

Indeed, Plaintiff's failure to put Stanford on notice is a sufficient basis, standing alone, for dismissal of the Complaint. *See Andersen v. Stability AI Ltd.*, 700 F. Supp. 3d 853, 863 n.2 (N.D. Cal. 2023) (instructing plaintiff in copyright case not to "lump" defendants together and instead to "identify each defendant by name with respect to conduct they allege each defendant engaged in"), *subsequent determination*, No. 23-cv-00201-WHO, 2024 WL 536279 (N.D. Cal. Feb. 8, 2024); *iPhone Application Litig.*, 2011 WL 4403963, at *8 (finding that, "by lumping all eight [defendants] together, Plaintiffs have not stated sufficient facts to state a claim for relief that is plausible against *one* Defendant").[5]

---

of their status and privilege." Compl. ¶¶ 49, 50, Dkt. 1 at 9. This *ad hominem* attack is irrelevant and improper.

[5] *See also Taylor v. IBM*, 54 F. App'x 794 (5th Cir. 2002) (affirming dismissal of copyright claims in part because plaintiffs "failed to allege specific acts of infringement by each defendant"); *Home Design Servs., Inc. v. David Weekley Homes, LLC*, No. 2:06-cv-350-FtM-29DNF, 2007 WL 1080001, at *3 (M.D. Fla. Apr. 9, 2007) (dismissing plaintiff's complaint for copyright infringement where the complaint "ma[de] no distinction between the conduct of the thirteen defendants" and "fail[ed] to notify each individual defendant of the actions that led to their joinder to the litigation"); *Livnat v. Lavi*, 44 U.S.P.Q.2d 1379, 1997 WL 563799, at *2 (S.D.N.Y. 1997) (finding that copyright infringement allegations as to one group of defendants were "not rendered sufficient merely by lumping those defendants together with [another defendant], who was directly responsible for the publication of the photographs").

## IV. CONCLUSION

Plaintiff's claims should be dismissed for multiple, compelling reasons.

*First*, under Rule 12(b)(1), Plaintiff lacks standing to bring direct infringement claims because it has failed to allege a concrete and actual "injury in fact" caused by Stanford's alleged use of Plaintiff's images in a dataset or research that does not incorporate any of Plaintiff's copyrighted works. This failure deprives the Court of subject matter jurisdiction.

*Second*, under Rule 12(b)(6), Plaintiff's direct infringement claims are barred by fair use under 17 U.S.C. § 107. Stanford's alleged uses, including the creation of a dataset and development of a computer model for academic research, are transformative and conducted for educational purposes. This weighs heavily in favor of fair use. Indeed, Plaintiff's own allegations confirm that Stanford's activities advance scholarship and research, two of the examples set forth in 17 U.S.C. § 107. Plaintiff's contributory infringement claim also is subject to dismissal because it does not identify any specific direct infringement by third parties, nor does it adequately allege that Stanford knowingly induced any infringing actions. Instead, Plaintiff's allegations amount to legal conclusions lacking factual support. Finally, the Complaint also is deficient as it fails to provide clear notice to Stanford regarding the specific allegations of infringement attributed to it, thus violating the requirements in Rule 8(a). The generalized nature of Plaintiff's claims makes it difficult, if not impossible, for Stanford to respond effectively.

Accordingly, Stanford respectfully asks the Court to grant this Motion and dismiss Plaintiff's Complaint in its entirety.

DATED: February 28, 2025

Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By: */s/ Joseph Petersen*
Joseph Petersen

Counsel for Defendant
The Board of Trustees of the Leland Stanford Junior University, sued as The Leland Stanford Junior University