Cliff Kuehn (Bar No. 273148)
Email: ckuehn@pirkeybarber.com
PIRKEY BARBER PLLC
3145 Geary Street, #753
San Francisco, CA 94118
Telephone: 512.322.5200
Facsimile: 512.322.5201

Christopher M. Weimer (Appearance *Pro Hac Vice*)
(TX Bar No. 24061894)
Email: cweimer@pirkeybarber.com
Taylor Luke (Appearance *Pro Hac Vice*)
(TX Bar No. 24136989)
Email: tluke@pirkeybarber.com
PIRKEY BARBER PLLC
1801 East 6th Street, Suite 300
Austin, TX 78702
Telephone: 512.322.5200
Facsimile: 512.322.5201

Attorneys for Defendants
William Marsh Rice University
and Baylor College of Medicine

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

EVOX PRODUCTIONS LLC, a Delaware limited liability company,

Plaintiff,

v.

THE LELAND STANFORD JUNIOR UNIVERSITY, WILLIAM MARSH RICE UNIVERSITY, BAYLOR COLLEGE OF MEDICINE, and DOES 1–10,

Defendants.

Case No. 5:24-cv-09521-NW

**DEFENDANTS WILLIAM MARSH RICE UNIVERSITY AND BAYLOR COLLEGE OF MEDICINE'S REPLY IN SUPPORT OF JOINT MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 8(a), 12(b)(1), 12(b)(2), AND 12(b)(6)**

Date: June 25, 2025
Time: 9:00 AM
Ctrm: 3 (5th Floor)

Judge: Hon. Noël Wise

## INTRODUCTION

EVOX's Opposition to the Combined Motions to Dismiss by Defendants William Marsh Rice University ("Rice") and Baylor College of Medicine ("Baylor"), ECF No. 41, does not overcome any of the challenges Defendants raised against EVOX's Complaint. Plaintiff does not persuasively justify its group-pleading methods, does not bridge the gap between the actions of Defendants as a whole and the individual actions of Baylor and Rice, and fails to establish this Court's personal jurisdiction over the Texas-based institutions. This Court should dismiss all claims against Baylor and Rice and deny jurisdictional discovery for the reasons set forth below and in Baylor and Rice's Motion to Dismiss (ECF No. 29).

## ARGUMENT

### I. Plaintiff fails to state a claim against Baylor and Rice.

Professor Erez Lieberman Aiden is the sixth of seven listed co-authors on the research paper underpinning Plaintiff's claims. There is no allegation in the Complaint that he—much less Rice or Baylor—collected allegedly infringing images, uploaded them into Stanford's dataset, or made them available for others to download. Instead, as described in Rice and Baylor's Response, his contributions were limited to the socioeconomic analysis described in the paper.

In its Opposition to Baylor and Rice's Motion to Dismiss, Plaintiff does not address this weak connection between its infringement claims and Rice and Baylor, but instead doubles down on its approach of lumping all Defendants' conduct together, arguing that the long frowned-upon pleading practice is proper here. ECF No. 41, hereinafter "Opp." at 10:1-27. Plaintiff's indiscriminate and undifferentiated allegations remain insufficient to state a claim against Defendants Rice and Baylor.

Beyond the conclusory allegation that Baylor and Rice "collaborate[d] with Stanford" (ECF No. 1, hereinafter "Complaint" ¶ 4), Plaintiff's only basis for its claims against the Texas institutions is the participation of their so-called

representative in the alleged "Consortium," and the fact that he "purposely announced his association with Defendants when he participated in the infringing activity at issue." Opp. at 1:5-9. This announced association in turn refers to the co-authorship credit given to Professor Erez Lieberman Aiden, the sole professor associated with Baylor or Rice, in the research paper connected to this matter. Opp. at 9:7-18; Declaration of Dr. Amy Dittmar (the "Rice Declaration") ¶ 7-8 Declaration of Dr. Carolyn L. Smith (The "Baylor Declaration") ¶ 7-8.

This is Plaintiff's only concrete allegation tying Professor Aiden, and by extension, Baylor and Rice, to the alleged infringement: an authorship credit. But the authorship credit only recognizes Professor Aiden's contributions to the final published paper. What is more, the paper for which he is credited is not alleged to include or consist of infringing content. Instead, Plaintiff's Opposition makes clear that its claims relate to gathering images of vehicles to develop a computer program used for the paper. Opp. 2:21-3:14; Compl. ¶¶27–28. In its opposition to Stanford's motion to dismiss, Plaintiff clarifies the narrow scope of its claims. ECF No. 40 at 5:23-6:1 (confirming that the paper "did not [itself] contain any EVOX images"; 6:21-28 (explaining that the research-paper allegations were "simply offered as background"); 9:9-21. Neither the paper at issue nor Plaintiff's Complaint suggest that Professor Aiden, let alone Baylor or Rice, was involved in gathering or sharing EVOX's images. *Compare* Baylor Declaration ¶ 13 (connecting Professor Aiden only to the socioeconomic portions of the article).

Thus, from one author credit, Plaintiff asks that the Court extrapolate a number of assumptions, including (1) Baylor and Rice's participation in an organized "Consortium" of universities that collaboratively infringed Plaintiff's copyright; (2) that Baylor and Rice *directly posted* the infringing images at issue on Stanford's website; and (3) that Baylor and Rice knowingly encouraged third parties

to copy the dataset from that same website.[1] Such extrapolation goes far beyond the deference that the Court must give to the Plaintiff's well-pleaded allegations at this stage. Instead, it presents an attenuated and implausible theory of liability meriting dismissal.

a. **Plaintiff's collective statements about all Defendants fail to establish a plausible cause of action against Baylor and Rice individually.**

Group pleading that makes allegations against all Defendants as a collective is generally not sufficient to establish a claim against individual Defendants when it fails to give Defendants notice of what conduct subjects it to suit. *See, e.g.*, *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) ("Plaintiff must allege the basis of his claim against each defendant to satisfy Federal Rule of Civil Procedure 8(a)(2)"); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (discussing the need to "give the defendant fair notice of what the . . . claim [against it] is and the grounds upon which it rests" (internal citation omitted)). Plaintiff relies on insufficient group pleading by alleging actions undertaken by all Defendants without specifying specific infringing conduct by Rice and Baylor. ECF No. 29 (hereinafter "Motion to Dismiss") at 3:1-25, 16:4-11.

Plaintiff attempts to justify its indiscriminate pleading method by citing four cases that are inapposite here. Plaintiff first cites *Tivoli LLC v. Sankey* to explain that "[g]roup pleading is not fatal to a complaint if the complaint still gives defendants fair notice of the claims against them." No. SACV141285DOCJCGX, 2015 WL 12683801, at *3 (C.D. Cal Feb 3, 2015). However, the *Tivoli* defendants were given fair notice from group pleading because all the "entity defendants [we]re

[1] Plaintiff's expansive theory of liability for direct and contributory copyright infringement would seem to extend to anyone involved in the paper, including PNAS (the Proceedings of the National Academy of Sciences), which published it, or even a student research assistant who contributed to its findings.

alleged to be related entities" that were "corporate affiliates and agents/employees of one another." *Id.* at *4. In stressing the strong relatedness between the parties, the *Tivoli* court reiterated why group pleading is disfavored: "Collective references to defendants often causes confusion when broad allegations are directed at a large and diverse group of defendants, obscuring which defendant is alleged to have committed which act. Here, the group is much narrower, closely related, and in the same general line of business." *Id.*

Here, the Defendant universities are not closely related or jointly owned. They do not have the same internal record-keeping systems that a group of jointly owned entities would have. A jointly owned group of defendants could attempt to make sense of lumped allegations against the entire group. The unrelated university defendants do not have that opportunity, and their unrelatedness makes it even less reasonable to claim all activity at issue in this case emanated from each university individually. Further, they are at least one step removed from the actions of the so-called Consortium, making it even less possible to assess what allegations are being levied against each university individually.

The other cases cited by Plaintiff in its attempt to justify group pleading also involve strongly related or jointly owned groups of Defendants. *See Sebastian Brown Prods., LLC v. Muzooka, Inc.*, 143 F.Supp.3d 1026, 1037 (N.D. Cal. 2015) (involving a Defendant group consisting of a corporation and its directors and officers); *Intuitive Imaging Informatics, LLC v. Intuitive Surgical Ops., Inc.* No. 2:23-CV-10593-DSF-RAO, 2024 WL 4404992, at *3 (C.D. Cal. Sept. 4, 2024) (involving Defendants that "share[d] a parent-subsidiary relationship"); *In re Pac. Fertility Ctr. Litig.*, No. 18-CV01586-JSC, 2019 WL 3753456, at *3 (N.D. Cal. Aug. 8, 2019) (involving Defendants that were subsequent owners of the at-issue fertility center). Because the Defendant universities do not have the same level of

relatedness, Baylor and Rice have not yet received adequate notice of what conduct gives rise to the litigation at hand.

Plaintiff's entire Opposition doubles down on its group-pleading approach. Plaintiff emphasizes its Defendant-pooling allegation strategy by redefining "Consortium" in its Opposition. Initially defining the Consortium as "comprised of representatives from the [Defendants'] university departments," (Compl. ¶ 27), Plaintiff now claims that its use of "Consortium" was for the exact purpose of including all Defendants' actions together: "use of the term 'Consortium' is simply intended to allege that Defendants[] acted collectively." Opp. at 8:28-9:1.

Plaintiff's impermissible group pleading emphasizes that the claims against Baylor and Rice are implausible and improperly pleaded.

b. **Plaintiff's allegations are insufficient to state a claim for direct infringement against Rice and Baylor.**

Plaintiff does not sufficiently allege that Baylor and Rice directly infringed EVOX's copyright. Without specific allegations that *Baylor and Rice* copied its protected works, Plaintiff cannot plausibly plead that either institution committed direct infringement. *See VHT, Inc. v. Zillow Group, Inc.*, 918 F.3d 723, 732 (9th Cir. 2019) (setting out the causation requirement for direct infringement.); *Oracle Am., Inc. v. Hewlett Packard Enter. Co.*, 971 F.3d 1042, 1053 (9th Cir. 2020) (applying a "*direct cause*" standard to direct infringement (emphasis in original)).

In its Opposition, Plaintiff does not even claim to allege that Baylor and Rice individually caused direct infringement. Instead, Plaintiff relies on its flawed group-pleading strategy to make out a claim against Rice and Baylor, asserting that a "plain reading of the Complaint demonstrates" Plaintiff's allegations of direct causation against them. Opp. at 8:22-26. Specifically, Plaintiff points to the allegation that "Defendants' representatives formed a 'Consortium' that collectively engaged in the infringing conduct" and that the collective "Defendants are accused

of reproducing, distributing, and publicly displaying EVOX's copyrighted images." Opp. at 8:24-26, 9:2-3.

These allegations fail to state a claim against Baylor and Rice because they fail to tie the institutions to the allegedly infringing act of copying Plaintiff's works. *See EVOX Prods. LLC v. AOL Inc.*, 2:20-cv-02907-JWH(JEMx), 2021 WL 10132494, at *4 (requiring a pleading that specific host-site defendants "themselves hosted, served, and displayed Evox's images"); *Twombly*, 550 U.S. at 555; *BMG Rts. Mgmt. (US) LLC v. Joyy Inc.*, 716 F.Supp.3d 835, 841 (C.D. Cal. 2024) (listing examples of direct infringement activity: "select[ing] any material for upload, download, transmission, or storage; or instigat[ing] any copying, storage or distribution of copyrighted materials" (internal quotations omitted)).

All of Plaintiff's allegations about direct acts of infringement are attributed to the so-called Consortium or to all Defendants, without specifying which entity or individual copied what. Plaintiff only connects Baylor and Rice to the alleged "Consortium" by listing the universities in the Complaint's "representatives" list. Compl. ¶ 27. Plaintiff admits that it only asserts direct infringement against Baylor and Rice through the collective actions of all Defendants, which remains improper. Opp. at 8:22-9:3. Additionally, Plaintiff provides no theory for how the unspecified actions of a representative result in a direct infringement claim against Baylor and Rice. This sort of attenuated theory of infringement—that one entity should be liable for the direct infringement of others—is more appropriately covered by contributory infringement theories(which also fail in this case, as discussed below). *See* Mot. to Dismiss at 15:15-18:8; *see also Med-Sys., Inc. v. Masterson Mktg., Inc.*, No. 11CV695 JLS BLM, 2011 WL 5873399, at *7 (S.D. Cal. Nov. 23, 2011) (finding that contributory infringement was not sufficiently pleaded when a counter-defendant was merely "involved in all of the contracting" and had not allegedly

taken "any affirmative steps to foster [the] distribution and display of the copyrighted materials").

As to Plaintiff's assertion that Professor Aiden's credit for his work on the paper inures to the benefit of Baylor and Rice, it bears repeating that Plaintiff has not alleged that the paper itself contains infringing material. But even if it did, it does not follow that Baylor and Rice are liable for allegedly tortious conduct occurring in connection with the publication of the paper. First, any recognition associated with the paper accrues first to Professor Aiden's benefit, not to Baylor or Rice. *See* Opp. at 11:9-11. Indeed, the case cited by Plaintiff discusses the benefits of recognition *for a professor*, not the university employing that professor. *Id.*; *see Weissmann v. Freeman*, 868 F.2d 1313, 1324 (2d Cir. 1989) ("Dr. Freeman stood to gain recognition among his peers in the profession and authorship credit with his attempted use of Weissmann's article."). Second, and as noted above, there are no allegations tying Professor Aiden, much less Baylor and Rice, to the actual copying or hosting of images alleged to have infringed Plaintiff's copyright, only to authoring the paper. Unless his conduct was independently tortious, whether his co-authorship credit on the paper benefits Rice or Baylor in any way is of no moment.

In this regard, Plaintiff's efforts to maintain claims against Baylor and Rice stand in contradistinction to direct infringement claims it has asserted against others. EVOX knows that a Plaintiff must allege that a direct infringement defendant "themselves hosted, served, and displayed Evox's images." *EVOX Prods. LLC*, 2021 WL 10132494, at *4. But in this action, EVOX alleges that mere authorship credit on a research paper renders Baylor and Rice responsible for directly copying EVOX's copyrighted material to Stanford's website. All other (conclusory) direct-infringement allegations relate to the conduct of the amorphous Consortium. EVOX fails to bridge the gap between simple authorship credit and direct copying, and, for that, the direct infringement claims must fail. *See also*

*EVOX Prods., LLC v. Verizon Media, Inc.*, No. 21-56046, 2022 WL 17430309 (9th Cir. Dec. 6, 2022) (overturning a dismissal of EVOX's pleadings when EVOX had in fact pleaded directly causal conduct of specific host sites).

Lastly, Plaintiff overstates the significance of Baylor and Rice quoting the "more likely explanations" language from *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The consideration of "more plausible" explanations merely helps a court confirm its findings that pleadings are otherwise implausible. This is how the Court considered "more likely explanations" of intent in *Iqbal* itself—as another means of confirming how the allegations of the complaint were insufficient. *Id.* at 681 ("Taken as true, these allegations are consistent with petitioners' purposefully designating detainees 'of high interest' because of their race, religion, or national origin. But given more likely explanations, they do not plausibly establish this purpose."). In their Motion to Dismiss, Baylor and Rice mentioned the professor-collaboration scenario as a more likely explanation than an organized Consortium of university institutions, not because that alone determines plausibility, but instead because it helps emphasize Plaintiff's failure to identify the universities' *direct* involvement. Motion to Dismiss at 13:13-21. Without allegations of direct copying performed by Baylor and Rice, the direct infringement claims must fail. *See VHT, Inc.*, 918 F.3d at 732; *Oracle*, 971 F.3d at 1053.

c. **Plaintiff fails to address the whole of Baylor and Rice's contributory infringement analysis.**

Plaintiff mischaracterizes Baylor and Rice's arguments to dismiss Plaintiff's contributory infringement claims as "divorced from what EVOX has actually alleged." Opp. 11:27. Plaintiff argues that Baylor and Rice only focus on the relationship between themselves and their representatives, ignoring the contributory infringement claims arising from the allegedly induced infringement

of "*other* third parties." Opp. at 12:5-7. This characterization of Baylor and Rice's Motion to Dismiss is incorrect.

In their Motion to Dismiss, Baylor and Rice address two levels of contributory infringement, neither of which is properly pleaded by Plaintiff. *See* Mot. to Dismiss at 15:15-18:8. First, Plaintiff does not sufficiently plead that Baylor and Rice contributed to their so-called representative's alleged infringement or the alleged infringement of the other universities. *See* Mot. to Dismiss at 15:21-25. Second, Plaintiff does not sufficiently plead that Baylor and Rice contributed to the infringement of the third parties who allegedly downloaded the dataset from Stanford's website. *See* Mot. to Dismiss at 16:1-3. Plaintiff's Opposition confirms that they intended to assert only the second theory of contributory infringement. Opp. at 12:1-9.

In its Opposition, Plaintiff focuses only on Baylor and Rice's first argument: that EVOX has not pleaded that Baylor and Rice "knew of the infringement allegedly committed by their 'representatives.'" Opp. at 12:4 (quoting Mot. to Dismiss at 15:24). However, the *very next sentence* of Baylor and Rice's Motion to Dismiss addresses the other, third-party basis for Plaintiff's contributory infringement claims: "The same is true for the alleged infringement resulting from third-party downloads of the dataset: no allegations point to Rice and Baylor's knowledge, contribution to, or inducement of such alleged infringement." Mot. to Dismiss at 16:1-4.

All arguments in the Motion to Dismiss regarding Plaintiff's failure to allege Baylor and Rice's knowledge of the other Defendants' infringement were also applied to the alleged third-party infringement that Plaintiff asserts. *See* Mot. to Dismiss 18:5-8 ("By the same token, without allegations that Rice and Baylor contributed to the alleged third-party downloads, there is no other alternative basis

for EVOX's claim of contributory infringement against them. . . ."). Plaintiff's arguments that this theory of infringement went unaddressed are unfounded.

Plaintiff's Opposition claims that it properly alleged that Baylor and Rice "(1) ha[d] knowledge of another's infringement and (2) either (a) materially contribute[d] to or (b) induce[d] that infringement." *See VHT, Inc. v. Zillow Group, Inc.*, 918 F.3d 723, 745 (9th Cir. 2019) (setting out the requirements of a contributory infringement claim) (internal quotation omitted). Plaintiff once again only points to its collective, indiscriminate allegations against all Defendants to support this argument. The Opposition reasserts that Defendants as a whole "upload[ed] EVOX's copyrighted images for the express purpose of letting others download them." Opp. 13:3-4. Yet Plaintiff offers no explanation for how Baylor and Rice could be responsible for the posting of EVOX's images on *Stanford's* website. Opp. 3:1-4 (alleging that the amorphous Consortium made EVOX's images available from Stanford's servers). Elsewhere, Plaintiff states in a footnote that Stanford "acknowledges that the images were purposely made available to the public at large." Opp. at 6 n.3. Plaintiff offers no theory or allegations as to how any alleged concession from Stanford should be imputed to the separate entities of Baylor and Rice.

Regarding legal precedent, all of Plaintiff's efforts at negating Baylor and Rice's cited authorities fall short. For example, consider Plaintiff's attempt to brush aside *Rearden LLC v. Walt Disney Co.*, which discusses contributory infringement's element of encouragement. No. 17-CV-04006-JST, 2018 WL 3031885 (N.D. Cal. June 18, 2018). Plaintiff asserts that it successfully pleaded that "Defendants did actively encourage infringement by third parties by inviting it." Opp. 13:13. This allegation fails twice over. First, this statement is conclusory—it can be effectively rewritten as "Defendants did actively encourage infringement by third parties by encouraging it." *See Iqbal*, 556 U.S at 678 (A "pleading that offers 'labels and

conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" (quoting *Twombly*, 550 U.S. at 555)). Second, this statement again lumps all Defendants together; it apparently asks the Court to conclude that because Professor Aiden appears as an author on the 2017 paper, Baylor and Rice could be held liable for encouraging others to download images hosted on a Stanford website. That is not plausible. There are no individualized allegations against either institution that would connect the dots on Plaintiff's highly attenuated theory of liability, which should therefore be dismissed.

## II. Plaintiff has not established that Baylor and Rice are subject to this Court's personal jurisdiction.

If the Court determines that Plaintiff has failed to state a claim against Baylor and Rice, it need not separately reach the question of personal jurisdiction against them. However, Plaintiff's Opposition does nothing to establish that Baylor and Rice are subject to this Court's personal jurisdiction. Nor does it adequately make the case for how jurisdictional discovery is necessary in this case.

As an initial matter, Plaintiff does not address Baylor and Rice's arguments against this Court's general jurisdiction. This issue handily resolves in Baylor and Rice's favor. *See* Mot. to Dismiss at 8:15-9:27.

The parties agree about the requirements of specific jurisdiction but disagree over whether Plaintiff meets its burden for establishing it. Most, if not all, of Plaintiff's allegations in support of specific personal jurisdiction are conclusory: Baylor and Rice "purposely directed their infringing activities [to California]"; "sought to collaborate with Stanford in this forum in a manner that resulted in the infringement of EVOX's copyrights"; "knew or should have known that their actions were likely to cause harm to EVOX, which is domiciled in California"; and "purposely partnered with Stanford in this forum in order to strengthen their standing in the highly competitive market for students focused on building

technology careers in Northern California in general, and Silicon Valley in particular." Compl. ¶¶ 3–5, 8. These assertions are unhelpful to EVOX as merely reciting the "bare bones" requirements of specific jurisdiction. *See Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007).

Plaintiff's Opposition again weighs heavily on the alleged actions of the Defendants as a whole, but courts considering specific jurisdiction require a showing of jurisdiction for each individual defendant. *Calder v. Jones*, 465 U.S. 783, 784 (1984) ("Each defendant's contact with the forum State must be assessed individually.").

Plaintiff's Opposition relies on its allegation that the Defendant universities "collaborate[d] with Stanford in this forum in a manner that resulted in the infringement of EVOX's copyrights" to establish personal jurisdiction. Compl. ¶ 4; Opp. 6:20-21. While this statement is certainly conclusory on the merits of copyright liability, it is also insufficient to allege activities targeted toward California that would create specific jurisdiction. Plaintiff's vague "collaboration" allegation is inadequate given the jurisdiction-consideration standard that the Court "may not assume the truth of allegations in a pleading which are contradicted by affidavit." *Apple Inc. v. VoIP-Pal.com, Inc.*, 506 F.Supp.3d 947, 957 (N.D. Cal. 2020) (quoting *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011)). Both Baylor and Rice's affidavits explicitly deny any such collaboration with Stanford. *See* Rice Declaration ¶ 6; Baylor Declaration ¶ 6.

Lastly, Plaintiff fails to illustrate a need for jurisdictional discovery. A district court generally has broad discretion in granting jurisdictional discovery. *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). The Ninth Circuit only overturns a rejection of jurisdictional discovery "upon the clearest showing that the denial of discovery results in actual and substantial prejudice to the complaining litigant." *Laub v. U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir.

2003) (internal quotations omitted). "Prejudice is established if there is a reasonable probability that the outcome would have been different had discovery been allowed." *Id.* "[W]here a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants, the Court need not permit even limited discovery." *Pebble Beach*, 453 F.3d at 1160 (internal quotations omitted).

In its Opposition, EVOX makes clear that the facts giving rise to its claims against Rice and Baylor stem from the participation of a professor associated with both institutions on a research paper. As explained above, Plaintiff has extrapolated all of Baylor and Rice's involvement in this suit from Professor Aiden's authorship credit in a paper that itself has not been alleged to infringe EVOX's copyright. No amount of discovery will change that, nor has EVOX persuasively argued how discovery would yield information directly tying Baylor and Rice to this forum.

Imposing discovery based on a single authorship credit would suggest that all universities could be subject to personal jurisdiction in other states whenever professors collaborate on academic works. This result would include all works by graduate students and faculty, and it simply would not reflect the reality of professorial collaboration. Research collaboration itself is not indicative of partnerships or consortiums between universities, nor does it suggest a connection to a forum state. Plaintiff claims otherwise here, and it fails to show that discovery would be anything other than a fishing expedition. *See Johnson v. Mitchell*, No. CIV S-10-1968 GEB GGH PS, 2012 WL 1657643, at *7 (E.D. Cal. May 10, 2012).

Jurisdictional discovery is unwarranted and should be denied.

## CONCLUSION

Plaintiff's Opposition to Baylor and Rice's Motion to Dismiss fails to cure the deficiencies of Plaintiff's Complaint. Plaintiff's allegations impermissibly encompass all Defendants together, fail to put Baylor and Rice on notice of what

conduct connects them to this matter, and do not name any specific actions that directly or indirectly tie Baylor and Rice to the alleged infringement outside of a single authorship credit. Further, Plaintiff does not show that Baylor and Rice have any contacts with California that give rise to this proceeding. EVOX's causes of action are implausibly pleaded and fail to establish this Court's jurisdiction. The Court should dismiss all claims against Baylor and Rice and deny any jurisdictional discovery.

DATED: March 21, 2025

PIRKEY BARBER PLLC

By: <u>*/s/ Christopher M. Weimer*</u>
Christopher M. Weimer
(Appearance *Pro Hac Vice*)
(TX Bar No. 24061894)
Taylor Luke
(Appearance *Pro Hac Vice*)
(TX Bar No. 24136989)

and

Cliff Kuehn (Bar No. 273148)

Attorneys for Defendants
WILLIAM MARSH RICE
UNIVERSITY and BAYLOR
COLLEGE OF MEDICINE

# PROOF OF SERVICE

I hereby certify that on March 21, 2025, I electronically filed the foregoing **DEFENDANTS WILLIAM MARSH RICE UNIVERSITY AND BAYLOR COLLEGE OF MEDICINE'S REPLY IN SUPPORT OF JOINT MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 8(a), 12(b)(1), 12(b)(2), AND 12(b)(6)** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following:

**Attorneys for Plaintiff**:
Michael J. Sachs
Jason P. Casero
CALLAHAN & BLAINE
3 Hutton Centre Drive
Ste. Ninth Floor
Santa Ana, CA 92707
mjs@callahan-law.com
jcasero@callahan-law.com

**Attorney for Defendant**
**The Leland Stanford Junior University**
Joseph Edward Petersen
KILPATRICK TOWNSEND & STOCKTON LLP
1302 El Camino Real, Suite 175
Menlo Park, CA 94025
jpetersen@ktslaw.com

*/s/* Christopher M. Weimer
Christopher M. Weimer