**KILPATRICK TOWNSEND & STOCKTON LLP**
Joseph Petersen (SBN 304597)
*jpetersen@ktslaw.com*
1302 El Camino Real, Suite 175
Menlo Park, California 94025
Telephone: (650) 614-6427

Kollin J. Zimmermann (SBN 273092)
*kzimmermann@ktslaw.com*
1801 Century Park East, Suite 2300
Los Angeles, California 90067
Telephone: (310) 248-3830

Sara K. Stadler (admitted *pro hac vice*)
*sstadler@ktslaw.com*
Briggs M. Wright (admitted *pro hac vice*)
*briggs.wright@ktslaw.com*
3 Times Square
New York, New York 10036
Telephone: (212) 775-8700

Counsel for Defendant The Board of Trustees of the Leland Stanford Junior University, sued as The Leland Stanford Junior University

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| EVOX PRODUCTIONS LLC, a Delaware corporation,<br><br>*Plaintiff*,<br><br>v.<br><br>THE LELAND STANFORD JUNIOR UNIVERSITY, WILLIAM MARSH RICE UNIVERSITY, UNIVERSITY OF MICHIGAN, BAYLOR COLLEGE OF MEDICINE, and DOES 1–10,<br><br>*Defendants*. | Case No. 3:24-cv-09521-NW<br><br>**DEFENDANT THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY'S REPLY IN SUPPORT OF MOTION TO DISMISS**<br><br>Judge: Hon. Noël Wise<br>Hearing Date: June 25, 2025<br>Hearing Time: 9:00 a.m.<br>Courtroom: 3 |

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... ii

I. INTRODUCTION .......... 1

II. ARGUMENT .......... 2

A. Plaintiff's Direct Infringement Claims Should Be Dismissed as to Defendants' Creation of a Dataset, Training of a Computer Model, and Publication of Research Papers. .......... 2

1. Plaintiff Repeatedly Concedes Its Direct Infringement Claims Do Not Include Those Uses. .......... 2

2. Plaintiff Cannot Establish Any "Injury in Fact" Caused by Defendants' Creation of a Dataset, Training of a Computer Model, and Publication of Research Papers. .......... 4

3. Plaintiff's Allegations Establish that Defendants' Creation of a Dataset, Training of a Computer Model, and Publication of Research Papers is Fair Use as a Matter of Law. .......... 6

B. Plaintiff's Contributory Infringement Claim Rests on Rhetoric and Speculation. .......... 9

III. CONCLUSION .......... 10

# TABLE OF AUTHORITIES

**Cases**

*Advanta-STAR Auto. Rsch. Corp. of Am. v. Search Optics, LLC*, 672 F. Supp. 3d 1035 (S.D. Cal. 2023) ........ 1

*Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023) ........ 7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 8, 10

*Authors Guild v. Google, Inc.*, 804 F.3d 202 (2d Cir. 2015) ........ 8

*Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87 (2d Cir. 2014) ........ 8

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........ 8, 10

*Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569 (1994) ........ 8

*Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23 (2003) ........ 3

*Doe 1 v. GitHub, Inc.*, No. 22-cv-06823-JST, 2024 WL 235217 (N.D. Cal. Jan. 22, 2024) ........ 5

*Hachette Book Grp., Inc. v. Internet Archive*, 115 F.4th 163 (2d Cir. 2024) ........ 7

*In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ........ 3

*Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992) ........ 5

*Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068 (9th Cir. 2013) ........ 9

*Metro-Godwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913 (2005) ........ 9

*Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657 (9th Cir. 2017) ........ 9, 10

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788 (9th Cir. 2007) ........ 9

*Raw Story Media, Inc. v. OpenAI, Inc.*, No. 24 Civ. 01514, 2024 WL 4711729 (S.D.N.Y. Nov. 7, 2024) ........ 5

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ........................................................................................ 5

*TransUnion LLC v. Ramirez*,
594 U.S. 413 (2021) ........................................................................................ 5

*Weissmann v. Freeman*,
868 F.2d 1313 (2d Cir. 1989)........................................................................... 7

*Wilder v. Sterns Lending, Inc.*,
No. CV 13-02369 MMM (CWx), 2013 WL 12638493 (C.D. Cal.
Nov. 25, 2013)................................................................................................... 7

**Statutes**

17 U.S.C. § 107 ..........................................................................................2, 3, 6, 7

**Rules**

Fed. R. Civ. P. 8.................................................................................................. 8

Fed. R. Civ. P. 12(b)(1)........................................................................................ 2

Fed. R. Civ. P. 12(b)(6)......................................................................................3, 6

# I. INTRODUCTION

Plaintiff's opposition to Stanford's Motion significantly narrows the issues in dispute.[1] *See* Plaintiff's Opp. to Stanford's Mot. to Dismiss ("Opp."), Dkt. 40.

Stanford moves to dismiss Plaintiff's direct infringement claim concerning Stanford's alleged uses of Plaintiff's copyrighted images to: (a) create a dataset, (b) develop and train a computer model designed to identify the makes and models of vehicles parked on public streets, and (c) publish academic research papers that do not contain copies of Plaintiff's allegedly copyrighted works.[2] Mot. at 3, Dkt. 28 at 9. In response, Plaintiff repeatedly concedes these uses are "not at issue" and were "merely added [to the Complaint] for background." Opp. at 9, 11, Dkt. 40 at 14, 16. These admissions alone support dismissal of Plaintiff's direct infringement claim as to these uses. Yet, Plaintiff's other arguments fare no better, as Plaintiff focuses almost exclusively on Defendants' alleged distribution of the dataset to enable researchers to engage in peer review. *Stanford did not move to dismiss as to that use*, making Plaintiff's arguments irrelevant to the issues before the Court.

---

[1] This Reply incorporates the defined terminology in Stanford's Notice of Motion to Dismiss and Supporting Memorandum of Points and Authorities ("Mot."). *See* Dkt. 28.

[2] Plaintiff complains that Stanford's Motion "ignores" Plaintiff's allegations concerning Stanford's distribution of its dataset for the purpose of enabling peer review. *See* Opp. at 1, Dkt. 40 at 6. To state the obvious, Stanford is entitled to decide which of Plaintiff's claims it moves to dismiss. Plaintiff's direct infringement claim is premised, in part, on alleged violations of its right of reproduction through, "among other things," the "assembl[ing]" of a dataset. *See* Dkt. 1 ¶ 60. For reasons discussed below, Plaintiff cannot state a claim for copyright infringement based on such alleged conduct, and allegations regarding infringement of Plaintiff's alleged reproduction right should be dismissed. *See, e.g.*, *Advanta-STAR Auto. Rsch. Corp. of Am. v. Search Optics, LLC*, 672 F. Supp. 3d 1035, 1055–56 (S.D. Cal. 2023) (granting motion to dismiss copyright infringement claim as to certain allegations). All the more so if, as Plaintiff now asserts, the allegations about Stanford's creation of a dataset were "merely added for background." Opp. at 9, Dkt. 40 at 14.

As for the uses actually raised by Stanford's Motion, Plaintiff has failed to identify any facts alleged in its Complaint that, if true, would suffice to establish that Defendants' dataset, computer model, and research articles directly infringe Plaintiff's alleged copyrights. This is because Plaintiff's allegations establish as a matter of law that Defendants' alleged use of Plaintiff's images to create a dataset, train a computer model, and publish academic papers are quintessentially fair uses under 17 U.S.C. § 107. Plaintiff therefore cannot succeed in establishing direct infringement.

The same is true of Plaintiff's arguments in support of its contributory infringement claim, which relies on boilerplate, speculation, and "information and belief" to the exclusion of properly pleaded facts. Plaintiff's opposition merely restates and amplifies its deficient allegations, sprinkled with *ad hominem* accusations that the arguments in Stanford's Motion are "absurd" and "folly." *See* Opp. at 15, 16, Dkt. 40 at 20. This does not suffice to state plausible claims. Finally, Plaintiff's opposition provides no justification for the Complaint's failure to put Stanford on notice of its particular conduct alleged to be infringing. Plaintiff's Complaint should be dismissed in its entirety.

## II. <u>ARGUMENT</u>

### A. Plaintiff's Direct Infringement Claims Should Be Dismissed as to Defendants' Creation of a Dataset, Training of a Computer Model, and Publication of Research Papers.

#### 1. Plaintiff Repeatedly Concedes Its Direct Infringement Claims Do Not Include Those Uses.

Stanford moves to dismiss Plaintiff's direct infringement claim concerning Stanford's alleged uses of Plaintiff's copyrighted images to create a dataset, train a computer model, and publish research articles on the grounds that: (1) Plaintiff has not alleged any concrete and actual "injury in fact" caused by those uses, and therefore Plaintiff's claims *as to those uses* should be dismissed under Rule 12(b)(1); and

(2) those uses are quintessential fair uses under 17 U.S.C. § 107, and therefore Plaintiff's claims also fail *as to those uses* under Rule 12(b)(6). Mot. at 3, Dkt. 28 at 9.

In response, Plaintiff repeatedly concedes that Defendants' creation of a dataset, development and training of a computer model, and publication of research articles are not among the infringing acts alleged.[3] Indeed, Plaintiff repeatedly asserts that its copyright claims are based solely on Defendants' use of Stanford's "website" and "server"[4] to distribute the dataset to researchers to enable peer review. *See* Compl. ¶¶ 29, 33, 34, Dkt. 1 at 6. To quote Plaintiff's opposition:

- While the Complaint alleges that Stanford "(a) created a dataset, (b) developed and trained a computer model, and (c) published research papers," "these facts . . . are merely added for background." Opp. at 9, Dkt. 40 at 14 (citing Mot. at 10); *see also* Opp. at 11, Dkt. 40 at 16.
- "[U]se of EVOX's copyrighted 'images to create a data set, develop and train a computer model, and publish academic research articles that do not

---

[3] Plaintiff does complain that "Defendant branded the dataset containing EVOX images the 'Stanford Cars Dataset,'" Opp. at 9, Dkt. 40 at 14, but Plaintiff has not asserted any claim to which this might be relevant (nor could it consistent with *Dastar Corp. v. Twentieth Century Fox Film Corp.*, 539 U.S. 23, 34, 37 (2003) (holding that the Lanham Act's "origin of goods" provision refers to the producer of the tangible goods sold in the marketplace, not the author of any idea, concept, or communication embodied in those goods, and that allowing a cause of action for misrepresentation of authorship of non-copyrighted works would create a "species of mutant copyright law" that limits the public's right to copy and use expired copyrights)).

[4] The Complaint's references to Stanford's website and server, *see* Compl. ¶¶ 29, 30, 33, Dkt. 1 at 6, do not suffice to allege *infringing conduct* by Stanford. As Plaintiff's opposition acknowledges, Opp. at 16–17, Dkt. 40 at 21–22, the only allegedly infringing conduct described in the Complaint is attributed either to a "Consortium" "comprised of Defendants' representatives" or to "Defendants" as a group. *See, e.g.*, Compl. ¶¶ 20, 58–64, 66–71, Dkt. 1 at 4, 10. Stanford maintains that these general allegations are insufficient to put Stanford on notice of its alleged conduct giving rise to liability. *See In re iPhone Application Litig.*, No. 11-MD-02250-LHK, 2011 WL 4403963, at *8 (N.D. Cal. Sept. 20, 2011).

themselves contain [EVOX's] copyrighted works' . . . . is not what this dispute is about." Opp. at 1, Dkt. 40 at 6 (quoting Mot. at 3).

- "EVOX's copyright claims are not targeted at this activity." Opp. at 11–12, Dkt. 40 at 16–17 (quoting Mot. at 12).
- "EVOX is not seeking damages for Defendant's creation of 'a dataset, develop[ment] of a computer program, and publish[ing of] an article that does not contain any of [EVOX's] copyright images' . . . ." Opp. at 8, Dkt. 40 at 13 (quoting Mot. at 7).
- Plaintiff's Motion therefore "focuses on activity that is not at issue." Opp. at 11, Dkt. 41 at 16 (quoting Mot. at 12).
- Instead, "EVOX's claims for direct and contributory copyright infringement are justified because Defendant *later* gave away EVOX's intellectual property to others." Opp. at 6, Dkt. 40 at 11 (emphasis added).

Plaintiff could not have made it any more clear that its claims do not include Defendants' use of Plaintiff's images to create a dataset, train a computer program, and publish research articles that do not contain Plaintiff's images. These admissions alone support dismissal of Plaintiff's direct infringement claim as to these uses.

**2. Plaintiff Cannot Establish Any "Injury in Fact" Caused by Defendants' Creation of a Dataset, Training of a Computer Model, and Publication of Research Papers.**

Plaintiff's substantive responses also support dismissal. First, Plaintiff argues the allegations in its Complaint are "sufficient to allege an injury in fact that confers Article III standing." Opp. at 8, Dkt. 41 at 13. Again, however, these allegations relate to Stanford's alleged distribution of the datasets "from [its] servers," which Plaintiff concedes was "subsequent[]" to Stanford's creation of the dataset, training of the computer model, and publication of the research articles. *Id.* Stanford has not moved to dismiss Plaintiff's direct infringement claim relating to Stanford's alleged

distribution of the datasets to peer reviewers. Thus, Plaintiff's arguments as to these alleged acts of distribution are irrelevant to the Motion.

Plaintiff also argues the Supreme Court's decisions in *TransUnion*, *Spokeo*, and *Lujan* do not apply because none of those cases arose under the Copyright Act.[5] *See* Opp. at 7, Dkt. 40 at 12. This argument is specious at best. "Injury in fact" is a constitutional requirement that applies in every case heard in Article III courts. *TransUnion*, 594 U.S. at 423 ("Article III [of the Constitution] confines the federal judicial power to the resolution of 'Cases' and 'Controversies' . . . ." (citation omitted)). The Supreme Court's pronouncements on "injury in fact" most certainly apply to Plaintiff's claims in this case. Under those precedents, Plaintiff bears the burden of establishing "a concrete injury even in the context of a statutory violation," *Spokeo*, 578 U.S. at 341, including alleged violations of the Copyright Act.

Plaintiff cannot satisfy this burden with respect to Stanford's creation of a dataset, training of a computer model, and publication of research articles. In *Raw Story Media, Inc. v. OpenAI, Inc.*, No. 24 Civ. 01514, 2024 WL 4711729 (S.D.N.Y. Nov. 7, 2024), the court found the plaintiffs lacked standing because they had not plausibly alleged a "substantial risk" that ChatGPT "will generate a response plagiarizing one of Plaintiffs' articles." *Id.* at *5. Plaintiff's allegations suffer from the very same defect: Plaintiff cannot truthfully allege that Stanford's creation of a dataset, training of a computer model, and publication of research articles caused copies of Plaintiff's images to be "output" to the public, *see Doe 1 v. GitHub, Inc.*, No. 22-cv-06823-JST, 2024 WL 235217, at *5 (N.D. Cal. Jan. 22, 2024) (citation omitted), thus causing Plaintiff to "suffer[] an injury in fact that is concrete, particularized, and actual or imminent." *See TransUnion*, 594 U.S. at 423 (citation omitted). Plaintiff therefore lacks standing to sue for direct infringement *based on these uses*.

---

[5] *See TransUnion LLC v. Ramirez*, 594 U.S. 413 (2021); *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016); *Lujan v. Defs. of Wildlife*, 504 U.S. 555 (1992).

### 3. Plaintiff's Allegations Establish that Defendants' Creation of a Dataset, Training of a Computer Model, and Publication of Research Papers is Fair Use as a Matter of Law.

Stanford also moves to dismiss Plaintiff's direct infringement claim under Rule 12(b)(6) because Stanford's alleged creation of the dataset, development of the computer model, and publication of the research articles are quintessential fair uses under 17 U.S.C. § 107. Plaintiff gives back-of-the-hand treatment to Stanford's analysis of the fair use factors based on an argument that Stanford's Motion does not include "the allegations that actually support EVOX's copyright claims." Opp. at 9, Dkt. 41 at 14. Again, Plaintiff misses the point: Stanford does not seek dismissal of Plaintiff's direct infringement claim relating to Stanford's alleged distribution of the datasets to peer reviewers. Stanford seeks dismissal of Plaintiff's claim relating to Stanford's alleged use of Plaintiff's images to create a dataset, develop and train a computer model, and publish research papers discussing this project and its potential applications.

As to *those uses*, the Complaint's allegations are limited to the following:

- Plaintiff "licenses" "the highest quality still images, interactive images, and videos of several thousand vehicle makes and models" to "a variety of entities in the automobile industry" (Compl. ¶ 18, Dkt. 1 at 4);
- The "Consortium . . . scoured the internet" for "images of vehicles" and "gathered [Plaintiff's] copyrighted Images" together (*id.* ¶¶ 26, 60, Dkt. 1 at 5, 10);
- The "Consortium" assembled those images "into a dataset on Defendants' servers" and "initially used the images it gathered to develop a computer program" (*id.* ¶¶ 28, 60, Dkt. 1 at 6, 10); and

- The "Consortium" published "an article related to the Consortium's use of [Plaintiff's] copyrighted Images" (*id.* ¶¶ 43, 44, Dkt. 1 at 8).[6]

Taken as true, these allegations establish Stanford's fair use of Plaintiff's works as a matter of law. *First*, the purposes served by Defendants' dataset, computer model, and research articles could not be more different than the purposes served by Plaintiff's vehicle photos. *See Andy Warhol Found. for Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508, 528 (2023) (alterations in original) (observing the examples given in 17 U.S.C. § 107, including "scholarship" and "research," are "easily understood" as fair use because "they contemplate the use of an original work to 'serv[e] a manifestly different purpose from the [work] itself'" (citations omitted)). *Second*, the Complaint does not contain a single allegation that Defendants' use was commercial.[7]

*Third*, the Complaint does not allege any facts suggesting that Defendants' creation of a dataset, training of a computer model, and publication of research articles caused "cognizable market harm" to Plaintiff by "serv[ing] as a substitute for the

---

[6] Stanford properly attached a copy of the 2017 Academic Paper to the Motion. *See* Mot. at 2 n.1, Dkt. 28 at 8; Dkt. 28-1. Plaintiff's assertion that the 2017 Academic Paper is hearsay is without merit. *See* Opp. at 14, Dkt. 40 at 19. Stanford does not offer the 2017 Academic Paper to prove the truth of the scientific assertions therein; instead, Stanford offers the 2017 Academic Paper to prove its *existence*. In other words, the 2017 Academic Paper shows simply that Plaintiff's claims do, in fact, relate to a research project. *See Wilder v. Sterns Lending, Inc.*, No. CV 13-02369 MMM (CWx), 2013 WL 12638493, at *5 (C.D. Cal. Nov. 25, 2013) (rejecting plaintiff's argument that documents were hearsay and could not be considered in the context of a motion to dismiss, holding that "[b]ecause the court does not rely on the documents for the truth of the matters asserted therein, they are not hearsay").

[7] Knowing it cannot truthfully allege commerciality, Plaintiff attempts to manufacture it by citing to *Weissmann v. Freeman*, 868 F.2d 1313, 1324 (2d Cir. 1989). *See* Opp. at 13 n.4, Dkt. 40 at 18. In its recent decision in *Hachette Book Group, Inc. v. Internet Archive*, 115 F.4th 163 (2d Cir. 2024), however, the Second Circuit cast doubt on *Weissman* by refusing to find Internet Archive's ("IA") purpose commercial just because it derived "non-monetary calculable benefits" from offering the Free Digital Library. *Id.* at 186. As the court wrote, "[c]haracterizing these general benefits as commercial profits would render commercial the activities of virtually any nonprofit organization that bolsters its reputation through its own nonprofit activities." *Id.*

original work." *See Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 96 (2d Cir. 2014) (quoting *Campbell v. Acuff-Rose Music, Inc.*, 510 U.S. 569, 591 (1994) (instructing that "cognizable market harm" is limited to "market substitution")). That is, Plaintiff has not alleged (nor can it truthfully do so) that potential licensees of Plaintiff's images would "opt to acquire" Defendants' dataset, computer model, and research articles instead. *See Authors Guild v. Google, Inc.*, 804 F.3d 202, 223 (2d Cir. 2015).

Knowing its allegations on these issues are insufficient, Plaintiff claims the arguments in Stanford's Motion create "disputed issues of fact." Opp. at 8, Dkt. 41 at 15. Plaintiff confuses the motion to dismiss standard with the standard governing summary judgment motions. This is not a motion for summary judgment, and Stanford's arguments are not evidence.[8] The question before the Court on this motion to dismiss is whether the Complaint "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face'"—i.e., whether the Complaint "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It does not.

Finally, Plaintiff attempts to resist dismissal by claiming it is entitled to discovery on the issues raised by Stanford's claim to fair use. As the Supreme Court famously stated in *Iqbal*, however, "Rule 8 . . . does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. . . . [O]nly a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 678–79. Even taking Plaintiff's allegations as true, Stanford's creation of a dataset, training of a computer model, and publication of research papers qualify as fair uses

---

[8] Thus, Stanford does not "ask[] this Court to accept on faith a series of unsupported representations" in the Motion. *See* Opp. at 1, Dkt. 40 at 6. Stanford's Motion asks this Court to weigh the sufficiency of *Plaintiff's factual allegations*.

as a matter of law. That being the case, Stanford is entitled to dismissal of Plaintiff's direct infringement claim *as to those uses*.

### B. Plaintiff's Contributory Infringement Claim Rests on Rhetoric and Speculation.

To plausibly plead contributory copyright infringement, Plaintiff must allege: (1) direct infringement by a third party; (2) Stanford's knowledge of that third party's direct infringement; and (3) that Stanford "either (a) materially contribute[d] to or (b) induce[d] that infringement." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 670 (9th Cir. 2017) (quoting *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*, 494 F.3d 788, 794–95 (9th Cir. 2007)). The Complaint alleges contributory infringement by way of the following allegations:

- Defendants or the Consortium "knowingly induced others to violate [Plaintiff's] copyrights by reproducing, distributing, publicly displaying, and making [Plaintiff's images] available" "on Defendants' servers" "without license or authorization" "with the expectation that the Images would be reproduced, distributed, and publicly displayed by other third-party websites" (Compl. ¶¶ 66, 67, Dkt. 1 at 11); and
- "[T]hird-party websites copied [Plaintiff's] Images . . . from Defendants' servers" and "used them to develop commercial products," which Defendants were "aware of . . . and encouraged . . . to advance their own interests." *Id.* ¶¶ 68–70, Dkt. 1 at 11.

As Stanford explained in the Motion, these conclusory allegations are insufficient to plausibly plead that Defendants knowingly induced infringement by third parties—i.e., that Defendants had "*actual knowledge* of *specific acts of infringement*," *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013) (emphases added) (citation omitted), and engaged in "*clear expression* or *other affirmative steps* taken to foster infringement" by third parties. *Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 919, 936–37 (2005) (emphases

added). This is because Plaintiff does not allege any *facts* that, taken as true, would establish any of these elements.

Knowing this, Plaintiff attempts to substitute arguments for facts. For example, Plaintiff argues its allegations concerning Defendants' distribution of the datasets to researchers suffice to establish Stanford's knowledge "that this would result in rampant infringement by third parties." Opp. at 15–16, Dkt. 40 at 20–21. As Plaintiff is surely aware, use and infringement are not the same thing. The Complaint does not allege any facts to establish that Defendants clearly meant to induce *infringement* and took affirmative steps *toward that end* (as opposed to intending to facilitate lawful uses, i.e., uses relating to enabling peer review of the 2017 Academic Paper). *See Giganews*, 847 F.3d at 672 (holding that even if defendant "offer[ed] 25,000 terabytes of copyrighted materials . . . without permission," and "advertise[d] that it does not keep track of subscriber downloads," that conduct would not suggest that defendant "clearly expressed an intent to promote infringement or took 'affirmative steps . . . to foster infringement'" (second and fourth alterations in original) (citations omitted)).

As a last resort, Plaintiff characterizes the arguments in Stanford's Motion as "absurd" and "folly." Opp. at 15, 16, Dkt. 40 at 20. This rhetoric, coupled with the Complaint's speculation and heavy reliance on "information and belief" (*see* Compl. ¶¶ 30, 36, 38, 39, 69, 70, Dkt. 1 at 6, 7, 11), cannot substitute for pleading factual content that would "allow[] the court to draw the reasonable inference that [Defendants are] liable for the misconduct alleged." *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Plaintiff's contributory infringement claim is conclusory, factually unsupported, and legally insufficient. That claim should be dismissed in its entirety.

## III. CONCLUSION

For the reasons discussed above and in Stanford's motion to dismiss and supporting memorandum of points and authorities, Stanford respectfully asks the Court to grant its Motion and dismiss Plaintiff's Complaint in its entirety.

DATED: March 21, 2025

Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By: */s/ Joseph Petersen*
Joseph Petersen

Counsel for Defendant
The Board of Trustees of the Leland Stanford Junior University, sued as The Leland Stanford Junior University