**KILPATRICK TOWNSEND & STOCKTON LLP**
Joseph Petersen (SBN 304597)
*jpetersen@ktslaw.com*
1302 El Camino Real, Suite 175
Menlo Park, California  94025
Telephone: (650) 614-6427
Facsimile: (650) 644-0570

Kollin J. Zimmermann (SBN 273092)
*kzimmermann@ktslaw.com*
1801 Century Park East, Suite 2300
Los Angeles, California  90067
Telephone: (310) 248-3830
Facsimile: (310) 860-0363

Sara K. Stadler (admitted *pro hac vice*)
*sstadler@ktslaw.com*
Briggs M. Wright (admitted *pro hac vice*)
*briggs.wright@ktslaw.com*
3 Times Square
New York, New York  10036
Telephone: (212) 775-8700
Facsimile: (212) 775-8800

Counsel for Defendant The Board of Trustees of the Leland Stanford
Junior University, sued as The Leland Stanford Junior University

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| EVOX PRODUCTIONS LLC, a Delaware corporation,<br><br>    *Plaintiff,*<br><br>    v.<br><br>THE LELAND STANFORD JUNIOR UNIVERSITY and DOES 1–10,<br><br>    *Defendants.* | Case No. 5:24-cv-09521-NW<br><br>**DEFENDANT THE LELAND STANFORD JUNIOR UNIVERSITY'S NOTICE OF MOTION TO DISMISS AND SUPPORTING MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge:    Hon. Noel Wise<br>Date:     March 11, 2026<br>Time:    9:00 a.m.<br>Courtroom: 8 |

STANFORD'S MOTION TO DISMISS SECOND
AMENDED INDUCEMENT CLAIM
CASE NO. 5:24-cv-09521-NW

# **TABLE OF CONTENTS**

NOTICE OF MOTION ..................................................................................1

MEMORANDUM OF POINTS AND AUTHORITIES ...................................1

    I.     INTRODUCTION ............................................................1

    II.    ARGUMENT .................................................................3

    III.   CONCLUSION ..............................................................6

APPENDIX.................................................................................................7

STANFORD'S MOTION TO DISMISS SECOND
AMENDED INDUCEMENT CLAIM
CASE NO. 5:24-cv-09521-NW

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*,
    598 U.S. 508 (2023) ...............................................................................................2

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) ...............................................................................................5

*Authors Guild, Inc. v. HathiTrust*,
    755 F.3d 87 (2d Cir. 2014) ....................................................................................3

*Authors Guild v. Google, Inc.*,
    804 F.3d 202 (2d Cir. 2015) ..................................................................................3

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ...............................................................................................5

*Bill Graham Archives v. Dorling Kindersley Ltd.*,
    448 F.3d 605 (2d Cir. 2006) ..................................................................................2

*Columbia Pictures Indus., Inc. v. Fung*,
    710 F.3d 1020 (9th Cir. 2013) ...............................................................................4

*Kadrey v. Meta Platforms, Inc.*,
    788 F. Supp. 3d 1026 (N.D. Cal. 2025)..............................................................3, 6

*Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*,
    545 U.S. 913 (2005) .........................................................................................4, 5, 6

*Perfect 10, Inc. v. Giganews, Inc.*,
    847 F.3d 657 (9th Cir. 2017)..................................................................................4

**Statutes**

Copyright Act, 17 U.S.C. § 101 *et seq.* ...........................................................1, 2, 6

**Other Authorities**

Federal Rule of Civil Procedure 12(b)(6).................................................................1

### NOTICE OF MOTION

PLEASE TAKE NOTICE that Defendant The Leland Stanford Junior University ("Stanford"), by and through undersigned counsel, will move this Court on March 11, 2026, at 9:00 a.m. before the Honorable Noël Wise at the Robert F. Peckham Federal Building, Courtroom 3, 280 South 1st Street, San Jose, California 95113.

Pursuant to Federal Rule of Civil Procedure 12(b)(6), Stanford seeks an Order dismissing with prejudice Count Two of the Second Amended Complaint ("SAC") (Dkt. 67) to the extent it alleges contributory infringement based on an inducement theory. Plaintiff cannot state a plausible claim for inducement of infringement under the Copyright Act, 17 U.S.C. § 101 *et seq.* Stanford's motion is based on this Notice of Motion and Memorandum of Points and Authorities, the pleadings and papers on file in this action, the arguments of counsel, and all other materials which may properly come before the Court at or before this motion is heard or taken under submission by the Court.

### MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

On October 30, 2025, the Court dismissed Plaintiff's amended claim for contributory copyright infringement based on alleged inducement, finding that Plaintiff "fail[ed] to plead sufficient facts, as opposed to legal conclusions, to support an inducement theory." Dkt. 65 at 5. As the Court properly asked, "How does EVOX know Stanford made its images available with th[e] express purpose [to induce infringement]?" *Id.* The answer, of course, is that Stanford had no such purpose.

Plaintiff knows it cannot truthfully allege otherwise, so it now alleges, instead, that Stanford "distributed the datasets containing EVOX's copyrighted Images for the express purpose of *allowing other researchers to confirm the validity of its underlying research*," which is "*standard academic practice . . .* so that other researchers can test

STANFORD'S MOTION TO DISMISS SECOND
AMENDED INDUCEMENT CLAIM
CASE NO. 5:24-cv-09521-NW

1

their research methods." SAC ¶¶ 68, 69, Dkt. 67 at 11 (emphases added). These allegations are fatal to Plaintiff's claims, as they make clear that Stanford lacked the requisite intent necessary to support an inducement claim.

By Plaintiff's own admission, Stanford allegedly distributed datasets containing Plaintiff's images for the purpose of enabling academic researchers to engage in "peer review" of a computer model. *Id.* ¶ 68, Dkt. 67 at 11. This purpose is distinct from Plaintiff's purpose, which is to "license[] these images to a variety of entities in the automobile industry." *Id.* ¶ 8, Dkt. 67 at 3. As the Supreme Court observed in *Andy Warhol Foundation for the Visual Arts, Inc. v. Goldsmith*, 598 U.S. 508 (2023), "a use that has a distinct purpose is justified because it furthers the goal of copyright." *Id.* at 531. This is why the examples in 17 U.S.C. § 107—including "scholarship" and "research"—are so "easily understood": "they contemplate the use of an original work to 'serv[e] a manifestly different purpose from the [work] itself.'" *Andy Warhol*, 598 U.S. at 528 (alterations in original) (citation omitted).

Under this test, and *based on Plaintiff's own allegations*, Stanford's use is highly transformative as a matter of law.[1] This makes the nature of Plaintiff's copyrighted works (stock photographs of automobiles) "of limited usefulness" under the second fair use factor. *See Bill Graham Archives v. Dorling Kindersley Ltd.*, 448 F.3d 605, 612 (2d Cir. 2006). As for the third and fourth factors, Plaintiff alleges that Stanford "distributed . . . datasets containing EVOX's copyrighted Images for the express purpose of allowing other researchers to confirm the validity of its underlying

---

[1] In determining whether a use is fair, courts are to consider the following factors:

    (1)    the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

    (2)    the nature of the copyrighted work;

    (3)    the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

    (4)    the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107.

research," and that "it is standard academic practice for researchers to publish and make available datasets used to develop their work, so that other researchers can test their research methods." SAC ¶¶ 68, 69, Dkt. 67 at 11. On their face, these allegations establish that Stanford's conduct was "reasonably appropriate to achieve [its] transformative purpose and was done in such a manner that it did not offer a competing substitute for the original." *See Authors Guild v. Google, Inc.*, 804 F.3d 202, 221 (2d Cir. 2015).

"To defeat a claim of fair use, the copyright holder must point to market harm that results because the secondary use serves as a substitute for the original work." *Authors Guild, Inc. v. HathiTrust*, 755 F.3d 87, 96 (2d Cir. 2014) (citation omitted). Plaintiff's alleged harm to its "licensing business"—i.e., through Stanford's failure to individually license Plaintiff's images—cannot establish market harm as a matter of law because "harm from the loss of fees paid to license a work for a transformative purpose is not cognizable." *Kadrey v. Meta Platforms, Inc.*, 788 F. Supp. 3d 1026, 1052 (N.D. Cal. 2025); *see* SAC ¶¶ 9, 15, Dkt. 67 at 3, 4.

To state a plausible claim for inducement, Plaintiff must allege facts sufficient to establish Stanford's intent to induce infringement by third parties. Yet, *Plaintiff's own allegations* establish that Stanford's "express purpose" in allegedly using Plaintiff's images was to engage in the "standard academic practice" of "peer review" to further academic research. *See id.* ¶¶ 68, 69, Dkt. 67 at 11 ("That is precisely what happened here."). Because Plaintiff's own allegations preclude it from plausibly alleging this essential element, the Court should dismiss Plaintiff's inducement claim with prejudice.

## II.   ARGUMENT

For the third consecutive time, Plaintiff has failed to plausibly plead contributory copyright infringement under an inducement theory because it has not alleged sufficient facts establishing that Stanford distributed its datasets with "an

object of promoting [their] use to infringe copyright." *Perfect 10, Inc. v. Giganews, Inc.*, 847 F.3d 657, 672 (9th Cir. 2017) (quoting *Columbia Pictures Indus., Inc. v. Fung*, 710 F.3d 1020, 1032 (9th Cir. 2013); *see also Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd.*, 545 U.S. 913, 936–37 (2005) ("[O]ne who distributes a device *with the object of promoting its use to infringe copyright*, as shown by clear expression or other affirmative steps taken to foster infringement, is liable for the resulting acts of infringement by third parties." (emphasis added)). Indeed, Plaintiff's allegations establish the opposite.

In the SAC, Plaintiff alleges contributory infringement generally in Paragraphs 51 through 59 and argues inducement "[a]s a separate and independent basis for contributory infringement liability" in Paragraphs 63 through 72. As detailed for the Court's ease of reference in the Appendix, most of the allegations in those paragraphs were lifted directly from Plaintiff's allegations in the First Amended Complaint ("FAC"). *Compare* SAC ¶¶ 51–59, 63–67, 71, 72, Dkt. 67 at 9–11, *with* FAC ¶¶ 19, 44, 47, 51–60, 63–66, Dkt. 57 at 4, 8–10. In rejecting Plaintiff's previous attempt to claim contributory infringement on an inducement theory, the Court agreed with Stanford that the allegations in the "FAC" column of the chart "are either conclusory or merely rehash allegations in [Plaintiff's] original complaint." Dkt. 65 at 4–5. This reasoning necessarily applies with equal force to the allegations in the "SAC" column, each of which Plaintiff has merely rehashed again.

The only new allegations in Plaintiff's inducement claim are in Paragraphs 68 through 70, which make it clear that Stanford's "express purpose" in allegedly using Plaintiff's images was *to engage in academic research*:

> 68. Indeed, it is standard academic practice for researchers to publish and make available datasets used to develop their work, so that other researchers can test their research methods. This is widely referred to as "peer review."

STANFORD'S MOTION TO DISMISS SECOND
AMENDED INDUCEMENT CLAIM
CASE NO. 5:24-cv-09521-NW

4

69. That is precisely what happened here. In fact, Stanford has acknowledged that it distributed the datasets containing EVOX's copyrighted Images for the express purpose of allowing other researchers to confirm the validity of its underlying research. This does not excuse Stanford's failure to license EVOX's copyrighted work, however, prior to sharing it with others.

70. Moreover, Stanford has no means of confirming that the third parties who reproduced, distributed, or publicly displayed EVOX's copyrighted Images did so for academic purposes.

SAC ¶¶ 68–70, Dkt. 67 at 11. Thus, these allegations actually eviscerate Plaintiff's inducement claim.

To plausibly plead contributory infringement by inducement, Plaintiff must allege sufficient facts, taken as true, to establish that Stanford distributed datasets containing Plaintiff's images "with the object of promoting [their] use to infringe copyright, as shown by clear expression or other affirmative steps taken to foster infringement." *Grokster*, 545 U.S. at 936–37; *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiff's own allegations negate this element. According to Plaintiff, Stanford distributed the datasets consistent with the "standard academic practice" of "peer review" and with the object of "allowing other researchers to confirm the validity of [Stanford's] underlying research"—not to promote infringement. *See* SAC ¶¶ 68, 69, Dkt. 67 at 11. The question whether Stanford had any "means of confirming" that researchers shared these "academic purposes" is irrelevant to the issue of Stanford's *intent*, which must be "shown by clear expression or other affirmative steps taken to foster infringement." *Grokster*, 545 U.S. at 936–37; *see* SAC ¶ 70, Dkt. 67 at 11.

As for Plaintiff's sweeping conclusion that Stanford's research purposes "do[] not excuse Stanford's failure to license EVOX's copyrighted work[s]," this is an

incorrect statement of law. *See* SAC ¶ 69, Dkt. 67 at 11. Fair uses of copyrighted works need not be licensed because they are "not . . . infringement[s] of copyright." 17 U.S.C. § 107. If lost licensing fees sufficed to defeat a claim to fair use, there would be no fair use. *See Kadrey*, 788 F. Supp. 3d at 1052 ("[T]o prevent the fourth factor analysis from becoming circular and favoring the rightsholder in every case, harm from the loss of fees paid to license a work for a transformative purpose is not cognizable" (citations omitted)). Plaintiff cannot state a plausible claim for inducement because its own allegations make clear that Stanford "distributed the datasets containing EVOX's copyrighted Images for the express purpose of allowing other researchers to confirm the validity of its underlying research"—not to promote use of the datasets "to infringe copyright." SAC ¶ 69, Dkt. 67 at 11; *see Grokster*, 545 U.S. at 936–37.

## III.  CONCLUSION

For the foregoing reasons, Stanford respectfully asks the Court to grant this Motion and dismiss Plaintiff's inducement claim with prejudice.

DATED:  December 3, 2025

Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP

By:  */s/ Joseph Petersen*
Joseph Petersen

Counsel for Defendant The Board of Trustees of the Leland Stanford Junior University, sued as The Leland Stanford Junior University

**APPENDIX**

| SAC (Dkt. 67) | FAC (Dkt. 57) |
|---|---|
| *Allegations of Contributory Infringement Generally* ||
| 51. Stanford made EVOX's copyrighted Images available on its servers with the express purpose of sharing them with third parties that did not have license or authorization to use them. | 52. Specifically, Stanford made EVOX's copyrighted Images available on its servers with the express purpose of sharing them with third parties that did not have license or authorization to use them. |
| 52. Indeed, Stanford expected that the Images would be reproduced, distributed, and publicly displayed by other third party websites. | 53. Indeed, Stanford expected that the Images would be reproduced, distributed, and publicly displayed by other third party websites. |
| 53. EVOX has confirmed that third party websites copied the EVOX Images available from Stanford's servers and infringed EVOX's copyrights. | 54. EVOX has confirmed that third party websites copied the EVOX Images available from Stanford's servers and infringed EVOX's copyrights. |
| 54. EVOX is informed and believes that Stanford was aware of this infringement by the third party websites, and encouraged it in order to advance its own interests. | 55. EVOX is informed and believes that Stanford was aware of this infringement by the third party websites, and encouraged it in order to advance its own interests. |
| 55. EVOX is informed and believes that third parties who retrieved EVOX's Images from Stanford's | 56. EVOX is informed and believes that third parties who retrieved EVOX's Images from Stanford's |

STANFORD'S MOTION TO DISMISS SECOND
AMENDED INDUCEMENT CLAIM
CASE NO. 5:24-cv-09521-NW

7

| SAC (Dkt. 67) | FAC (Dkt. 57) |
| --- | --- |
| servers have used them to develop commercial products. | servers have used them to develop commercial products. |
| 56. Stanford's representatives were aware that the Images were protected by copyright registration because they knowingly gathered them from commercial sources. | 58. Stanford's representatives were aware that the Images were protected by copyright registration because they knowingly gathered them from commercial sources. |
| 57. Third parties violated EVOX's exclusive rights of reproduction by downloading the copyrighted Images from Stanford's servers. | 59. Third parties violated EVOX's exclusive rights of reproduction by downloading the copyrighted Images from Stanford's servers. |
| 58. Upon information and belief, many of these third parties also violated EVOX's exclusive right of distribution and public display by further disseminating the copyrighted Images, and making them available from their own servers. | 60. Upon information and belief, many of these third parties also violated EVOX's exclusive right of distribution and public display by further disseminating the copyrighted Images, and making them available from their own servers. |
| 59. Thus, Stanford is liable for contributory infringement because its representatives materially contributed and knowingly induced others to violate EVOX's copyrights by reproducing, distributing, publicly displaying, and making available EVOX Images without license or | 51. Stanford is liable for contributory infringement because its representatives materially contributed and knowingly induced others to violate EVOX's copyrights by reproducing, distributing, publicly displaying, and making available EVOX Images without license or |

| SAC (Dkt. 67) | FAC (Dkt. 57) |
|---|---|
| authorization. | authorization. |
| *Allegations Specific to Inducement* ||
| 63. As a separate and independent basis for contributory infringement liability, Stanford's conduct also induced infringement of EVOX's copyrighted Images. Stanford's representatives were responsible for gathering and assembling EVOX's copyrighted Images into datasets. Stanford then distributed these datasets by making them available for download from Stanford's servers. | 63. Stanford's conduct also induced infringement of EVOX's copyrighted Images. . . . <br><br> 57. . . . Stanford's representatives were responsible for gathering the Images, assembling them, and making them available from Stanford's servers. <br><br> 47. . . . Stanford . . . made EVOX's copyrighted Images available for download by others from Stanford's servers. |
| 64. The assembly, reproduction, distribution, and public display of EVOX's images from Stanford's servers constituted copyright infringement. | 44. Stanford infringed EVOX's copyrights by reproducing, distributing, publicly displaying, and making available EVOX Images without license or authorization. |
| 65. The third parties that ultimately reproduced and downloaded the datasets containing EVOX's copyrighted Images from Stanford's servers also infringed EVOX's copyrights, because they did not have authorization or license to do so. | 59. Third parties violated EVOX's exclusive rights of reproduction by downloading the copyrighted Images from Stanford's servers. <br><br> 19. EVOX is informed and believes that the copyrighted Images that Stanford made publicly available on its |

| SAC (Dkt. 67) | FAC (Dkt. 57) |
|---|---|
| | website were downloaded repeatedly by other users without license or authorization. |
| 66. Stanford distributed the Images from its servers with the sole intent that third parties would download the images, thereby violating EVOX's exclusive rights. | 63. . . . In fact, Stanford distributed the Images from its servers with the intent that third parties would download the images, thereby violating EVOX's exclusive rights of reproduction. |
| 67. To be clear, Stanford had no other purpose for distributing EVOX's copyrighted Images from its servers other than inducing the copyright infringement by others. | 64. To be clear, Stanford had no other purpose for distributing EVOX's copyrighted Images from its servers other than inducing the copyright infringement by others. |
| 71. But for Stanford's conduct, additional acts of copyright infringement by third parties would not have occurred. | 65. But for Stanford's conduct, additional acts of copyright infringement by third parties would not have occurred. |
| 72. EVOX has been damaged by Stanford's contributory infringement in an amount to be determined. | 66. EVOX has been damaged by Stanford's contributory infringement in an amount to be determined. |